## WATTERS, Respondent, v. RYAN, Appellant.

### (141 N. W. 359.)

**Specific Performance—Defenses—Inequity, Injustice, Hardship.**

Where an owner, pending litigation involving his title, in 1906 contracted to convey and give possession of his land on which were mortgages amounting to $4,950. for $4,800., $400. to be paid on execution of contract, balance when land was conveyed, vendor to convey when and if the litigation terminated in his favor, balance of purchase money to be then paid less amount of mortgages with accrued interest, vendor to pay all taxes, the deferred payments not to bear interest, the litigation not having terminated until 1910, the mortgages having been foreclosed meanwhile and the land sold for taxes, and defendant, vendee, who was in possession and receiving benefits from use of land more than enough to cover taxes and mortgage interest, having redeemed from such sales and paid other taxes without there being a sale, and claimed the right to apply these payments on balance of purchase price, leaving practically nothing due; held, that the construction of the contract as contended for by the vendee was so inequitable, unjust, and unreasonable, resulting as it did in vendor losing his equity without consideration, while vendee obtained use of the land for several years without paying anything therefor, as to lead to the conclusion that both parties anticipated a speedy determination of the litigation; hence the hardship resulting from delay in termination of litigation justified denial of specific performance unless vendee would consent to be charged with the reasonable value of use of the land, or to a conscientious modification of the contract; or, unless the trial court upon a new trial shall be able, under such further light as it may receive, to construe the contract so that, even after lapse of so much time, equity may be done between the parties thereunder.

(Opinion filed May 10, 1913.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by George M. Watters against J. W. Ryan, for specific performance of contract for conveyance of land. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

*Sterling &. Clark,* and *M. Moriarty,* for Appellant.

The contract, as construed by plaintiff, is not just, and reasonable so as to warrant a court of equity in enforcing its performance. Section 2345 of the Civil Code of 1903.

If a court of equity cannot construe a contract so as to make it reasonable and unoppressive, it will not decree specific performance. Frye on Spec. Perf., 3 Am. Ed. 649, 651, 1425, 1419; Coevell v. Cole, 16 Mich 228; Bostwick v. Beach, 105 N. Y. 661; Pomeroy on Contracts (Spec. Perf.) 2nd Ed. Sec. 175 to 184 inc., and Sec. 185 to 192 inc.; Phelan v. Neary, 22 S. D. 271.

A contract will not be specifically enforced if there is a change of circumstances that will render it inequitable so to do. Kimball v. Toodle, 70 Ill. 553; Aspert v. Wilson, 190 Ill. 629.

If the decree of the lower court is allowed to stand, defendant will have been deprived of his entire equity in the land, as well as the use of the premises during the long period that the property was in litigation. A court of equity will not lend its aid to a conclusion so unjust and oppressive. Mechanics Bank v. Leon, 26 U. S. 376, 7 L. Ed. 185; Pomeroy on Contracts, Spec. Perf., Sec. Ed. Sec. 185.

*W. F. Bruell,* and *W. A. Morris,* for Respondent.

WHITING, P. J. Action for the specific performance of a contract for the purchase and sale of a half section of land. Trial to the court in June, 1911. Findings and judgment for plaintiff. Defendant appeals. Appellant's contentions are: first, that the written contract is not sufficiently complete, definite, and certain to warrant a court of equity in decreeing specific performance; second, that plaintiff has not shown such performance on his part and such tender of performance as to entitle him to a decree; third, that the contract is not equitable, just, and reasonable so as to warrant a court of equity in enforcing its specific performance. The contract was dated September 19, 1906. By its terms, Ryan, as first party, agrees to sell, convey, and assure unto Watters, as second party, in fee simple, clear of all incumberance (except as thereinafter mentioned) by a good and sufficient warranty deed, the half section of land described. Watters agrees to pay Ryan $4,800, purchase price, as follows: "The sum of $400 at the execution of this contract, the receipt of which is hereby acknowledged; the balance of the purchase price to be paid when said

land is conveyed· to second party as hereinafter set forth." The contract recites that the title to the land is in litigation in an action wherein one Thomas is plaintiff and Ryan and Edwards defendants, and provides that in case said action shall terminate in favor of Ryan in the Supreme Court of this state, he shall forthwith convey the land to Watters by warranty deed, and Watters "shall then and there pay * * * the balance of the purchase price due, less whatever mortgages there are now upon said premises, and less all interest that may accumulate thereon from the date of this contract. It is understood and agreed that the second party shall pay, or cause to be paid, the mortgages now against said land with all interest accrued thereon after the date when said premises are conveyed to him." Ryan was to have the crop grown on the premises for the year 1906, but Watters shall "go into possession of said real estate and shall have the use and benefit of said land and the right to the crops grown thereon during the year 1907 and until said matter has been finally terminated." It is further provided that, if the decision in the pending· litigation shall be adverse to Ryan, he shall be released from all liability under the contract, and shall refund to Watters the $400 paid on the purchase price. The contract further provides that Ryan shall pay the taxes that may accrue on the land up to the time of conveying the same; and that "the deferred payments under this contract shall not bear interest, except as hereinbefore mentioned as to the mortgages now existing upon said premises." The foregoing are the provisions of the contract material to the questions presented on this appeal.

The trial court held the contract to be complete, definite, and certain in its terms, and construed the terms of such contract in accordance with the contention of respondent. Under the view which we take, it becomes unnecessary for us to pass upon appellant's contention that the terms of such contract were incomplete, indefinite, and uncertain. Neither is it necessary for us to determine whether there has been full performance of the contract on the part of respondent—there certainly has been such performance by him providing the trial court properly construed· the contract. The only question necessary for our determination is whether the contract, as contended for by respondent and construed by the trial court, is "equitable, just, and reasonable," and one

which, especially under the circumstances of this case, a court of equity should enforce by a decree of specific performance.

One Thomas formerly owned this land and had conveyed the same to one Edwards, who in turn had conveyed to appellant. In January, 1906, Thomas brought an action against appellant and Edwards seeking a decree setting aside the deed from himself to Edwards and the deed from Edwards to appellant. In the spring of 1906, the trial court rendered judgment in said action in favor of Ryan, and Thomas appealed said cause to this court, where it was pending at the time of the execution of the contract involved in this action. Final judgment upon said appeal was not entered until January 25, 1910, when judgment in favor of Ryan was entered by this court. Thomas v. Ryan, 24 S. D. 71, 123 N. W. 68. At the time the contract was entered into between the parties hereto, the land in question was incumbered by three certain real estate mortgages securing, in the aggregate, notes amounting to $2,950 and bearing interest at 8 per cent. per annum. These debts and the interest thereon not being paid when due each of these mortgages was foreclosed and sale had in the foreclosure proceedings during the time that the appeal in Thomas V. Ryan, supra, was pending in this court. Appellant failed to pay the taxes assessed and levied against this land, which taxes amounted to about $40 per year. During the year of redemption from each of said foreclosure sales, respondent redeemed the lands from such foreclosure sale; and he also, from time to time, either purchased the land on tax sales for the unpaid taxes and acquired tax certificates therefor, redeemed the lands from tax sales, or paid the taxes without there being a sale therefor. Respondent in March, 1910, demanded a deed of appellant and tendered the sum of $55 as the amount remaining due and unpaid on the contract herein. This tender was rejected, and appellant refused to deliver the deed undess paid the sum of $859.91. On April 9, 1910, respondent deposited to the credit of appellant the sum of $55 in a bank at Redfield, which deposit still remains in said bank. The trial court found that the amount due against said land under the said contract for the taxes and interest thereon paid by respondent, and for the mortgage indebtedness and foreclosure expenses paid by him, did, on April 9, 1910, amount to the sum of $4,582.50; and the court further found that the appellant, at all times subsequent to the date of the con-

tract, refused to redeem the said land from the taxes and tax liens and from the mortgage foreclosures. It appeared by the uncontradicted evidence herein, that the value of the use and occupation of these premises amounted to the sum of at least $300.00 per year and that the respondent had the possession of said premises and enjoyed the use of same in accordance with the terms of the contract.

It was the contention of respondent—which contention was upheld by the trial court—that, under the terms of the contract involved in this action, the respondent was not bound to pay any in-interest whatsoever on the deferred payment of $4,400 from the date of such contract to such time as, under such contract, the deed should be delivered by appellant; that appellant had convenanted to pay all taxes assessed against the land and to keep the interest on the mortgages paid up, so that respondent was entitled to deduct from the deferred payment of $4,400 all sums paid by him upon taxes together with the interest on said sums, and also was entitled to deduct from said deferred payment of $4,400 the mortgage indebtedness against said land, including all interest and foreclosure costs that had accumulated thereon; and that respondent was entitled to the use and occupation of said premises without crediting appellant anything therefor.

Appellant is certainly right in his contention that the contract before us is one that is not equitable, just, or reasonable, and is one such as no court of equity should enforce by a decree of specific performance, providing the said contract is subject to the construction given to it by the respondent and the trial court. Applying equitable principles long established and cherished by civilized humanity to this contract as construed by the trial court, and to the surrounding facts and circumstances, no court, entitled to be called a court of justice, can find justifiable excuse for enforcing same. This court has well said: "When * * * the material facts are established by undisputed evidence, 'the principles of equity come into operation and pronounce with certainty and absoluteness whether the remedy shall be granted or withheld.'" Case T. M Co. v. Farnsworth, 28 S. D. 432, 134 N. W. 819. And when, as in this case, a trial court has failed to regard the established principles of equity, the appellate court should not hesitate in reversing it. One of the fundamental principles of equity is, "He who comes

into a court of equity must come with clean hands"; another, "He who seeks equity must do equity." A person who contracts to purchase property, knowing the terms of his contract to be such as respondent contends are found in the contract before us, and, after the lapse of nearly four years, attempts to enforce those terms, neither comes into court with "clean hands," nor does he offer to "do equity" toward his fellow man, and his claim is not entitled to favorable consideration in a court of equity.

The commonly recognized rule is that, where a purchaser has possession of the property, he should pay interest upon the deferred payments and keep up the taxes, and courts will enforce this wherever possible, holding the same to be reasonable and equitable. Upon the other hand, where the purchaser does not acquire possession, the courts hold that it is reasonable and equitable that the seller receive no interest on deferred payments and that he pay the taxes. Let us see what the trial court held was done in this case under this contract. The defendant contracts to sell his land and gets down the paltry sum of $400 out of a total selling price of $4,800. The use of these premises per year is worth $300.00. The contract is made in the fall of the year, and the plaintiff is to receive possession of the premises and to have the crops during the succeeding years. Instead of the seller receiving interest on the deferred payments, as he ordinarily would under such circumstances, he is to receive absolutely no interest regardless of how long this contract shall run before the deal closes. He turns over the possession of his land, receiving nothing in consideration for the $300 rental value thereof—which $300 would have more than kept up the interest on the mortgage indebtedness and the taxes. This is not all; he must not only pay such taxes while the other party is reaping all the benefits from same, but, to cap the climax, he must deduct from the $4,400 coming to him not only the amount of the mortgages at the time the contract was entered into, but also all interest that shall have accrued thereon thereafter. If a skillful and unscrupulous person could draft a contract more inequitable and unjust than this one, as construed by the trial court, we are unable to conceive what its terms would be. As so construed, nothing but the lapse of time was necessary to take from appellant all of his $1,450 equity in this half section of land, while during the same lapse of time, for no consideration what-

soever, respondent would receive benefit amounting in money value to $1,500. That this is true can but appear upon a moment's reflection. There was interest and taxes which either must be paid by appellant or else finally, with accrued interest thereon be deducted from the $1,400 balance due him. This interest and taxes amounted to $280 a year. If this contract should run for five years and there had been no additional expenses growing out of foreclosures and tax sales, appellant's equity would entirely disappear (unless he had paid out upon interest and taxes the full amount of such equity to preserve same), while, for no further consideration than the original payment of $400, respondent would receive $1,500 in the value of the rentals and still have the right, if the lands advanced in value so that there was an equity left above the agreed purchase price, to take the land and reap such benefit. As construed, the contract called for a payment to appellant of $4,400 less mortgages, taxes, and accrued interest. The findings of the court show that the accumulated incumbrances against the land amounted to $4,582.50; in other words, if the contract were fully enforced, respondent was entitled to receive a deed without further payment, and was even entitled to recover of appellant the sum of $182.50.

This case must be determined upon one or the other of two theories, both leading to the same conclusion, to wit: (1) That the parties entered into the contract anticipating that it might be some considerable time before the litigation ended and the contract could be consummated; (2) that the parties entered into the contract anticipating a speedy termination of the pending litigation.

If the parties anticipated that this litigation might be long drawn out, then they entered into a contract which, under the conditions anticipated, was not only inequitable, but, for all the reasons hereinbefore set forth, absolutely unconscionable.

If the parties anticipated that there would be a speedy termination of the pending litigation—and this is the more charitable view to take—and their anticipations had been realized, the contract, *while inequitable in terms,* would not, if lived up to, have worked any great financial wrong, any more than would a contract to pay interest at 50 per cent. per annum after maturity of a note, if the note should chance to be paid at or near maturity. Upon reading this contract, one might conclude that both parties an-

ticipated a speedy determination of the appeal and therefore over-looked how inequitable its terms were; certainly the parties should have had a right to anticipate that such appeal would be pending but a few months rather than a few years. The very inequitableness of the contract would urge us to this conclusion; moreover, respondent in his brief says: "It is true that the case of Thomas v. Ryan was, for some reason, held in this court for a longer time than was anticipated." Considering therefore that neither party anticipated such delay, we are called upon to apply the well-established rule that subsequent events, which the parties cannot reasonably be supposed to have had in mind when the contract was made and which work a hardship to defendant, furnish sufficient reason for refusing specific performance. 36 Cyc. 617; Pomeroy's Equitable Remedies, § 798.

Both of the above authorities cite in support of this rule the case of Fitzpatrick .v. Dorland, 27 Hun (N. Y.) 291. In this case litigation involving the title. of a piece of land was begun the day before the owner entered into a contract to sell such land. The contract mentioned the litigation and provided that the sale should be closed when the litigation ended. A small sum was paid down and the contract provided that this should be repaid if the pending litigation went against the vendor. Possession of the land was retained by the vendor. There were mortgages against the land. The contract was *perfectly fair in its terms,* but it appeared that the vendor was an invalid and financially embarrassed at time contract was entered into. The litigation did not end for nearly 14 years, when it ended in favor of the vendor named in the contract. The vendee then tendered the balance of purchase price and demanded deed. This was refused and action for specific performance begun. It appeared that the land had increased largely in value—a fact undoubtedly true in the present case, but which we deem of little importance. It appeared "that a large amount of taxes and assessments had accumulated and remained unpaid; that large sums were. due for mortgages, judgments, and interest, which also remained unpaid, although much had been paid by the defendant for principal and interest of mortgages and judgments." The premises had remained vacant, so that the vendor had received little income therefrom—far different from the pending case, where the use of· the premises was valuable and the vendee re-

receive the benefit thereof. In every way the present case should appeal much more to a court of equity in behalf of the vendor. Under the terms of the contract before us as such contract was construed by the trial court, if it had run as long as the contract in the New York case did, the vendee would have been entitled to a deed, and, if taxes and interest on mortgages had not been kept up by the vendor, to recover of the vendor the sum of some $4,000 and accrued interest, which, together with the value of the use of the land and accrued interest thereon, would have paid all the mortgages and taxes and have given him this land free of incumbrances. We refer to this to show how in the one case the contract itself was equitable, while in the other inequitable, thus presenting an additional reason why this contract should never be enforced.

In its decision the New York court quoted with apparent approval the following from the decision of the trial court: "After 15 years of litigation on defendant's part to protect her title to the property, the plaintiff now asks specific performance of the contract, according to its original terms. It is evident that the parties to the contract in question never contemplated so long a delay in its consummation. That the vendor should bear all the burdens of the property for 15 years, and then be compelled to convey it for the contract price, would seem inequitable, especially when the value has increased threefold. The amount paid for taxes, assessments, and interest on the premises nearly equals, if it does not exceed, said contract price. Equity will not decree specific performance of a contract when it would work injustice, and where (as in this case) it is obvious that the contracting parties never expected or intended the results that have followed their action. Margraf v. Muir, 57 N. Y. 158; Peters v. Delaplaine, 49 N. Y. 362; Cuff v. Dorland, 55 Barb. (N. Y.) 481."

To this the Supreme Court added the following: "So in this case the lots in question were in the possession of grantor and yielded a very insignificant income for a short period, but were subject to taxes and assessments and other incumbrances, an account of which must necesarily be taken in order to show the correct relations of the parties to each other under this contract if a specific performance were to be decreed. It would indeed seem to be against conscience and justice to allow the plaintiff to succeed

in obtaining a decree of this court directing a specific performance of the contract when the property had increased to a sum in value more than double the amount he was to pay for it, and with sums due for taxes and assessments exceeding more than one-half of the price to be paid originally, the result of which would be that the defendant would receive comparatively nothing for her property. It is not necessary to state the numerous reasons why the contract should not be enforced after such a lapse of time, and after the intervention of the facts and circumstances affecting the relation of the parties which are disclosed by the evidence in the case. It cannot be entertained for a moment that any court of equity, in the exercise of a discretion vested in it, would grant a decree for a specific performance in such a case."

In a case involving the application of the same rule the appellate court of New York said: "But even if the contract by its true interpretation imposes upon the defendant the legal obligation to pay the assessment, this is not decisive of the right of the plaintiff to relief by way of specific performance. This equitable remedy cannot be claimed as a matter or right. It is discretionary with the court to grant or withhold it in furtherance of justice, or to prevent injustice. Where * * * * * by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable, and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable laches or inattention by the party resisting performance, in not forseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy." Gotthelf v. Stranahan, 138 N. Y. 345, 34 N. E. 286, 20 L. R. A. 455.

In closing this part of our opinion, we can do no better than quote with approval the following words of Justice Field of the federal Supreme Court in his opinion in the case of Willard v. Taylor, 8 Wall, 557, 19 L. Ed. 503, wherein the above rule of law was enforced: "Chancellor Kent, in Seymour v. Delancey, 6 Johns. Ch. (N. Y.) 222, upon an extended review of the authorities on the subject, declares it to be a settled principle that a specific per-

formance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court upon a view of all the circumstances; and Chancellor Bates, of Delaware, in Goodwin v. Collins, recently decided, upon a very full consideration of the adjudged cases, says that a patient examination of the whole course of decisions on this subject has left with him 'no doubt that, as a matter of judicial history, such a discretion has always been exercised in administering this branch of equity jurisprudence.' It is true the cases cited, in which the discretion of the court is asserted, arose upon contracts in which there existed some inequality or unfairness in the terms, by reason of which injustice would have followed a specific performance. But the same discretion is exercised where the contract is fair in its terms, if its enforcement, from subsequent events, or even from collateral circumstances, would work hardship or injustice to either of the parties. * * * The discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity. No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice, for if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accompanied with conditions which will obviate that result. If that result can be thus obviated, a specific performance will generally in such cases be decreed conditionally. It is the advantage of a court of equity, as observed by Lord Redesdale in Davis v. Hone, 2 Sch. & Lef. 348, that it can modify the demands of parties according to justice, and where, as in that case, it would be inequitable, from a change in circumstances, to enforce a contract specifically, it may refuse its decree unless the party will consent to

a conscientious modification of the contract, or, what would generally amount to the same thing, take a decree upon condition of doing or relinquishing certain things to the other party."

If respondent had come into a court of equity, admitted that the conditions were not those anticipated, asked to be charged for the reasonable value of the use of the premises—thus making the terms of the contract reasonable and just—he would then have had some standing in such court; but to enforce the letter of this contract, as such contract was interpreted by the trial court, would, in the words of the court in Gotthelf v. Stranahan, supra, "convert the equitable power of the court into an instrument for the accomplishment of rank injustice."

It might be contended that appellant is entitled to no consideration from a court of equity because he allowed the land to be sold for taxes and upon foreclosure. He certainly would have been foolish to pay out any money on this land with such a contract hanging over his head, moreover, he cannot be criticised for not bringing an action to set aside such contract while the other action involving his title to the land was undetermined.

This cause should be remanded to the trial court for further trial and unless such court shall be able, under such further light as it may receive upon another trial, to construe the contract so that, even after the lapse of the long period that has run since it was entered into, equity may be done between the parties hereto, or unless respondent shall come into court and "consent to a conscientious modification of the contract" (Willard v. Taylor, supra), it should remand the respondent to his rights at law and refuse specific performance of the contract.

The judgment and order appealed from are reversed.