[Civ. No. 8291. First Appellate District, Division One.—June 24, 1932.]

R. L. MOSER et al., Respondents, v. ORIN A. PEARCE, Appellant.

Overton, Lyman & Plumb and William R. James for Appellant.

Koenig & Brunton for Respondents.

KNIGHT, J.—The defendant, Orin A. Pearce, appeals from a judgment rendered against him in an action for the specific performance of an agreement relating to the purchase and sale of two groups of lots. The grounds urged for reversal are that the amended complaint and the evidence are insufficient to support a judgment for specific performance and that the form of judgment rendered is erroneous.

The plaintiffs, R. L. and Carliss Moser, were purchasing the lots in question from the Bank of Italy under separate executory contracts of sale, upon which there was a balance due of less than $3,000 on the first group, and of less than $4,500 on the second group. In that situation and in March,

1929, they entered into an agreement with defendant whereby they agreed to sell and defendant agreed to buy the first group for $3,500 and the second group for $5,000. In furtherance of such agreement defendant paid to plaintiffs a deposit of $500 on each group, evidenced by two so-called sales deposit receipts, identical in form except as to amounts, descriptions of the property, etc. After acknowledging the payment of the deposit, each receipt provided, among other things, that upon the payment of the balance of the purchase price a grant deed should be delivered to the purchaser, together with a guarantee of title made by an approved title company, showing free and clear title; also that an escrow should be opened at the Wilshire National Bank for the consummation of the sale, and that defendant should have thirty days within which to pay to the depositary the balance of the purchase price. Attached to each receipt was the signed agreement of the vendee and the vendors to purchase and sell the property on the terms and conditions stated therein. On the day following the payment of the deposits the escrow was opened with the Wilshire National Bank as contemplated by the terms of the sales deposit receipts. It was evidenced by written instructions, the essential portions of those relating to the first group of lots reading as follows: "March 26th, 1929. The Wilshire National Bank I will hand you on or before Thirty (30) days from this date, Three Thousand ($3,000.00) Dollars. I have paid outside of escrow Five Hundred ($500.00) Dollars. You are authorized to deliver the above to the order of R. L. Moser and Carliss Moser, husband and wife as joint tenants, when you hold for Orin A. Pearce (1st) Recorded deed, covering the following described property: . . . (2) Guarantee or Certificate of Title, or Policy of Title Insurance with liability of Title Company limited to $3,500.00 showing record title to property described in said deed to be vested in Orin A. Pearce, free and clear from encumbrances, . . . In the event that the conditions of this escrow have not been completed within or before May 10th, 1929, you are instructed to complete the same at the earliest date possible thereafter, unless I have made a written demand upon you for the return of the money and instruments deposited by me. . . . (signed) Orin A. Pearce." Continuing, the instructions read: "The conditions as set forth

herein are hereby approved and the demands of the seller are hereby agreed to. The provision for extension of time within which this escrow may be closed applies equally to me. I herewith hand you Contract of Sale between me as purchaser under contract, and the Bank of Italy, and authorize you to obtain from said Bank of Italy, Deed, conveying the property herein described to Orin A. Pearce, . . . Three Thousand ($3,000.00) Dollars. I acknowledge receipt of $500.00 as paid outside of escrow. And when you hold, subject to order of the grantors . . . I will furnish a Guarantee or Certificate of Title, or Policy of Title Insurance as herein set out, showing title in the condition as herein set forth . . . Pay to Bank of Italy their demand for Deed together with interest to date in accordance with said demand . . . '' (signed) R. L. Moser and Carliss Moser. The escrow instructions relating to the second group of lots were admittedly in the same form.

Soon after the escrow was opened plaintiffs executed and delivered to the Wilshire National Bank two deeds conveying the lots to defendant; they also procured and delivered to said bank, so the findings declare, ''a report on a title search to said property, with the purpose of obtaining a certificate of title as required by said agreement and instructions''. The Bank of Italy also deposited in escrow with the Wilshire National Bank its deeds of the property to plaintiffs, with instructions to deliver the same to plaintiffs upon the payment of the balance due the bank on the property. On April 5, 1929, the depositary bank notified defendant of the receipt of said documents and stated that it was in a position to complete the escrow when he deposited the $7,500 cash purchase price as called for in the escrow agreements; but defendant failed to come forward with the purchase price. On April 30, 1929, plaintiffs notified defendant that the balance of the purchase price was due, and demanded that the same be paid forthwith, but defendant did not comply with the demand, nor has he ever paid or offered to pay said balance or any part thereof; and on May 8, 1929, plaintiffs filed this action to obtain a decree requiring specific performance of the agreements.

Defendant's attack upon the sufficiency of the complaint and the evidence is based upon the contention that it was neither pleaded nor proved that plaintiffs were able

to carry out the terms of their agreements; that on the contrary it affirmatively appears that title to the property was at all times vested in the Bank of Italy. This objection is fully answered by the admitted fact that the deed of the Bank of Italy was placed in escrow with the Wilshire National Bank, ready for delivery upon the payment by defendant of the balance of the purchase price, which payment was never made.

Nor is there any merit in defendant's further contention that plaintiffs failed to perform their part of the agreement because they did not deliver to the depositary a *recorded* deed conveying the property to defendant, or any certificate of title or policy of title insurance showing record title in defendant clear and free from encumbrances. As will be noted from the escrow instructions, the first step required to be taken in the consummation of the sale was that defendant deposit with the Wilshire National Bank the balance of the purchase price, amounting to $7,500, which he agreed to do within thirty days, but which admittedly he has never done; and it would be a most unreasonable and unusual construction to place upon the escrow instructions to hold as defendant contends that plaintiffs were required to deliver in escrow a recorded deed to defendant, thus vesting absolute title in defendant before he deposited the purchase price therefor.

The judgment decreed in substance: First, that plaintiffs recover from the defendant the respective balances due under the agreements of sale, to wit, $3,000 and $4,000; second, that each sum "is a valid lien upon the land" agreed to be sold; third, that the land or so much thereof as may be necessary to satisfy such lien be sold by the sheriff; fourth, that the proceeds of the sale be applied to the payment (a) of the costs of the sale, (b) of plaintiffs' costs, (c) of the amount of plaintiffs' liens; (d) that any surplus be paid to defendant, or if there was a deficit, that it be docketed against defendant; and the concluding provision of the judgment was as follows: "This judgment is conditioned upon the plaintiffs' depositing with the Clerk of this Court, within thirty days *after this judgment shall become final,* a Grant Deed to the defendant, to the property hereinbefore described together with a Certificate of Title of a reputable title company, . . . with a Guarantee in the sum of Thirty-

five Hundred Dollars . . . and in the sum of Five Thousand Dollars . . . showing title vested in the defendant, free and clear of incumbrances . . . '' (Italics ours.)

It is evident from an analysis of the judgment that the trial court deemed it essential that plaintiffs tender to defendant a deed to the property together with a certificate showing clear title or a policy of title insurance, as a condition to awarding judgment against defendant for the balance of the purchase price, thus affording defendant an opportunity to avoid the entry of judgment against him by accepting the tender and paying for the property; otherwise it would not have incorporated the condition in the judgment; but as will be seen, the form of judgment rendered does not accomplish that purpose, because it provides that the condition imposed shall be performed within thirty days ''after this judgment shall become final''. In other words, after the judgment against the defendant for the balance of the purchase price has become final, the plaintiffs may or may not perform the condition imposed by the decree. It cannot be assumed that they will, and if they do not, the judgment in their favor and against the defendant for the balance of the purchase price will nevertheless stand. The effect of the judgment as rendered is therefore to compel defendant to perform his part of the agreement by imposing upon him a final judgment for the balance of the purchase price without compelling plaintiffs to perform their part of the agreement by tendering a deed and a certificate of clear title or a policy of title insurance, as called for in their agreement. We are of the opinion, therefore, that the judgment in its present form cannot be sustained.

However, as held in *McKevitt* v. *City of Sacramento,* 55 Cal. App. 117 [203 Pac. 132], where, as here, time is not of the essence of the contract and there is a positive agreement to buy and not a mere option depending upon sufficiency of showing of title, it is within the jurisdiction of the court to allow the vendor in a suit for specific performance a reasonable time within which to perform his part of the agreement, providing to do so will work no injustice to the vendee. In that case the purpose was attained by the entry of an interlocutory decree; and the same course may be followed here, by directing that within a specified number of days after notice of the entry of the interlocutory decree

plaintiffs deposit the necessary documents with the clerk of the court, and that defendant be granted a specified number of days thereafter within which to pay the balance of the purchase price and accept said documents; or upon defendant's failure so to do, that final judgment be entered against him for the balance of the purchase price, and that such additional relief be granted as may be necessary to execute the judgment.

Furthermore, the form of the judgment rendered appears to be objectionable upon the additional ground that it creates a vendor's lien upon the property in favor of plaintiffs with directions to foreclose the same and out of the proceeds of the sale to pay plaintiffs the amount due them on the balance of the purchase price; whereas the record upon which the judgment is based affirmatively shows that the property at all times belonged to, and for aught the judgment decrees title will continue to remain in, the Bank of Italy; that plaintiffs are still indebted to the bank for the balance of the purchase price, amounting to some $7,500; and no provision was made in the judgment to liquidate the balance due the bank from plaintiffs, nor was the bank made a party to the action. On the other hand, if it be deemed that as between the bank and plaintiffs the latter are the owners of the property, then that portion of the judgment creating the lien thereon cannot be sustained, because under well-settled principles one may not have a lien on property of which he is the owner. (16 Cal. Jur. 311.) In any event this, too, is a matter which may be corrected if an interlocutory decree be entered.

It is ordered, therefore, that the judgment be reversed, with directions to enter an interlocutory decree in accordance with the view herein expressed; and that thereafter such further proceedings be taken in the action as may be necessary and proper to a final disposition thereof.

Tyler, P. J., and Cashin, J., concurred.