RENNER et ux., Appellants v. CRISMAN et ux., Respondents

(127 N.W.2d 717)

(File No. 10102. Opinion filed April 22, 1964)

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Plaintiffs and Appellants.

**Gunderson, Farrar, Carrell & Aldrich,** Rapid City, for Defendants and Respondents.

HOMEYER, J. Specific performance of a real estate contract was denied plaintiffs and they appeal.

The subject property is a ranching unit of about 380 acres in Pennington County known as the Medicine Mountain ranch. On February 2, 1957, it was sold by L. M. Test and Lois L. Test to plaintiffs under contract for deed for $35,000. A down payment of $1,000 was made with the execution of the contract, $2,000 was paid March 15, 1957 and the balance was payable in annual installments of $1,100. One of plaintiffs testified payments were current at the time of trial which would mean that $25,400 remained unpaid on the contract. Plaintiffs had the privilege of prepaying all or any part of the unpaid purchase price with accrued interest to date of payment at any time. The contract for deed is not a part of the record except as portions are shown in one of the abstracts of title. On February 28, 1962, plaintiffs granted defendants a written two-month's option to purchase the ranch for $40,000. In the option plaintiffs covenanted that they were the owners of the property; that the title was to be conveyed free and clear of all encumbrances; that it was given to enable defendants to obtain a government insured FHA loan; that seller was to pay all expenses of title clearing, if required, abstracts, etc., and that all taxes, liens, encumbrances, or other interests of third persons were to be satisfied, discharged, or paid by plaintiffs; title evidence was to be obtained from persons and be in such form as the government shall approve; that conveyance was to be by general warranty deed in the form, manner and at the time required by the government and buyers were to receive a valid, unencumbered, indefeasible fee simple title meeting all government requirements; that the purchase price was to be paid at the time of recording such deed. On April 27, 1962, defendants accepted the option and shortly afterwards plaintiffs delivered abstracts of title to the loaning agency. On May 22, 1962, defendants through their counsel served notice of rescission upon plaintiffs claiming misrepre-

sentation. This action was commenced on September 14, 1962. In their complaint plaintiffs allege ownership of the ranch on date of option, execution and acceptance of option, delivery of abstracts, service of notice of rescission, refusal to perform by defendants, and that plaintiffs are ready, willing and able to perform and offer to perform. By answer defendants admitted granting of the option to them and written acceptance thereof, but otherwise denied the allegations of the complaint. They affirmatively alleged misrepresentation of the ranch boundaries by plaintiffs' agent and asked for cancellation of the contract.

The trial court found that plaintiffs were not the owners of the fee title to the subject property and were unable to deliver title in accordance with the terms of the option agreement. Also, that plaintiffs did not have good and merchantable title and could not give defendants a title free from reasonable doubt. These findings are challenged by proper assignments of error.

Although an option to purchase real estate is initially unilateral in its nature, upon timely acceptance it becomes a mutually binding contract capable of enforcement and subject to the same rules as a bilateral contract. Tennant v. Rafferty, 44 S.D. 235, 184 N.W. 195; Alfson v. Anderson, N.D., 78 N.W.2d 693; 81 C.J.S. Specific Performance § 47.

The remedy of specific performance is available to the vendor of real estate although the relief actually sought is the recovery of money, the purchase price, for which he may also have a remedy at law. 49 Am.Jur., Specific Performance, § 94; Marso v. Heck, 50 S.D. 332, 210 N.W. 153. Utilization of this equitable remedy is not an absolute right, but rests within the sound discretion of the court. Watters v. Ryan, 31 S.D. 536, 141 N.W. 359. However, this discretion is a judicial discretion and controlled by established principles of equity. J. I. Case Threshing Mach. Co. v. Farnsworth, 28 S.D. 432, 134 N.W. 819. Denial of specific performance in the instant case does not appear to have been predicated on equitable principles.

It is obvious the trial court took the position that since the Tests had not conveyed the legal title to plaintiffs, they were not entitled to specific performance and this was a condition

precedent to their right to ask for specific performance. The relationship between an installment vendor and his vendee is essentially that of secured creditor and debtor. The vendee for all practical purposes is the owner of the property, generally with the right of possession and use, and the vendor's sole remaining interest is to be paid the agreed consideration in the form and manner provided by the instrument used to secure payment thereof. The security device employed may curtail or broaden the scope of remedies available in case of default of payment, but the final interest of the seller is nothing other than the right to payment of whatever sums are still owed him on the sale of the property. The vendee's interest has been termed an equitable interest, Phillis v. Gross, 32 S.D. 438, 143 N.W. 373; 39 S.D. 434, 164 N.W. 971, or an equitable title. Paynesville Land Co. v. Grabow, 160 Minn. 414, 200 N.W. 481; Miller v. Dyer, 20 Cal.2d 526, 127 P.2d 901, 141 A.L.R. 1428. Courts have not hesitated in granting the vendee specific performance in cases where the vendor holds an executory contract from a third person either by proceeding against the immediate vendor alone with proper compensation for the deficiency in performance, if any, or by joining the holder of the legal title in the action. Vaughn v. Rosencrance, 73 S.D. 36, 38 N.W.2d 822. Cutler v. Lovinger, 212 Mich. 272, 180 N.W. 462. See also annotation 141 A.L.R. 1432.

In the Paynesville Land Co. case, supra, the court, in disposing of the same contention urged by defendants herein, said: "But when the vendor has a valid subsisting enforceable contract, with a third person who holds title and who stands ready to perform, it is sufficient. Such does not prevent the vendee from getting all that he is entitled to under his contract. An incumbrance or other defect removable at the time of the completion of the purchase is not a ground for rescission. Duluth Loan & Land Co. v. Klovdahl, 55 Minn. 341, 56 N.W. 1119. Where existing liens can be discharged out of the purchase price to be paid at delivery of the deed, the vendor is not required to discharge such liens out of his own funds prior to the time fixed for such delivery, but may cause them to be paid out of the purchase price at that time. Johnson v. Herbst, 140 Minn. 147, 167 N.W. 356; Lynch v. Higgins, 154 Minn. 151, 191 N.W. 422. The same principle should also reach and include the amount

due to former owners who have sold under contract. The vendee does not suffer, and there is nothing unreasonable in such course of business. We are of the opinion that plaintiffs under the facts in this case were, at the time for performance, in a position to carry out the contract with appellant, and the character of their title was such as to fulfill all legal requirements."

In Riley v. Wheat, 45 S.D. 320, 187 N.W. 425, vendor sought specific performance where time was of the essence and an $8,000 mortgage was unsatisfied at time of performance. The court summarily dismissed the vendee's contention that failure to pay such encumbrance excused his compliance with the contract by stating "Where the incumbrance can be removed merely by the application of the purchase money, and the court can provide for a conveyance of a clear title to the vendee, the mere fact that an incumbrance exists which the plaintiff has not removed, or even is unable to remove without the application of the purchase money, will not prevent a decree for specific performance. * * *" The use of installment land contracts on sales of real estate and the rights and remedies of parties thereto is the subject of articles appearing in Vols. 6 and 7 of the 1961 and 1962 South Dakota Law Review. Their popularity and frequent usage in South Dakota and other midwestern states as a credit instrument on sale of real estate is common knowledge. We see no compelling reason to distinguish between unpaid mortgages and unpaid vendor's balances in contracts for deed in applying relevant rules in specific performance actions.

Included in the subject ranch was an irregular tract of about 60 acres noncontiguous to the main unit and consisting of three patented mining claims which was acquired by W. W. Towne and C. T. Strauss as tenants in common by Treasurer's Tax Deed in 1937. In 1947 these parties executed an agreement which recognized each party's ownership of a one-half interest in the property, including minerals and timber, and further recognized Towne's absolute right to a suitable area for a summer cabin and Strauss' exclusive grazing rights. In 1949 Towne quitclaimed his interest in the mining claims to Myrtle Wilmarth and the deed recited that it was subject to the recorded agreement between Strauss and Towne. It is argued that this agreement constituted

an easement by which Towne still retained rights in the mining claims and an encumbrance upon the property justifying the court in denying specific performance. The Tests subsequently acquired all interests of Strauss and Myrtle Wilmarth in such mining claims. It is contended that when Towne conveyed his interest in the property to Myrtle Wilmarth and used the clause "subject to" the recorded agreement between himself and Strauss, he thereby retained a cabin site easement in the mining claims.

The words "subject to" are frequently used in conveyances and are generally considered terms of qualification. Cox v. Butts, 48 Okl. 147, 149 P. 1090; Consolidated Coal Co. v. Peers, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624. In their ordinary sense, they mean "subordinate to", "subservient to", "limited by", or "charged with." There is nothing in their use which connotes a reservation or retention of property rights. Englestein v. Mintz, 345 Ill. 48, 177 N.E. 746; Shell Oil Co. v. Manley Oil Corp., 7 Cir., 124 F.2d 714. The grantor Towne in his conveyance to Myrtle Wilmarth parted with his entire interest in the mining claims, subject however to such additional rights as may have been created and recognized in his 1947 agreement with Strauss. This would mean that his grantee Wilmarth acquired the right to a cabin site, but in turn was burdened with allowing Strauss absolute grazing rights. We are of the opinion that it would be unreasonable to construe the quitclaim deed as containing a reservation by Towne of an easement for a cabin site when he parted with all other interest in the mining claims. This construction is manifested by subsequent entries in the abstract which show that Myrtle Wilmarth brought a partition action against the Tests and Renners and this action appears to have been settled by her accepting absolute title to the fourth mining claim described in the Treasurer's Tax Deed and Agreement and conveying to the Tests absolute title to the three mining claims which are included in the subject matter of the present action. Even assuming an easement existed which did not merge with the title of the Tests, we are of the opinion that under the circumstances of this transaction it would not have been sufficiently material to defeat specific performance and, if not subject to removal or correction, compensation would be proper for a deficiency in performance. SDC 1960 Supp. 37.4605; Riley v.

Wheat, 45 S.D. 320, 187 N.W. 425; Weitzel v. Leyson, 23 S.D. 367, 121 N.W. 868.

■ We consider the contention of defendants that the title to the mining claims is unmerchantable because it originated through a Treasurer's Tax Deed as untenable. The tax deed was recorded on July 19, 1937. It would be a simple matter to comply with the provisions of Chapter 51.16B, SDC 1960 Supp. to establish marketable title.

■ We come now to a more serious question. Legal title was in the Tests, plaintiffs' vendors, and since they were not parties to the action, should relief be denied? This requires us to consider the status of the Tests so far as this action is concerned. There was no controversy between the Tests and plaintiffs. Likewise, there was no controversy between the Tests and defendants. Parties are generally classified as formal or proper, necessary, and indispensable. Weitzel v. Felker, 76 S.D. 216, 76 N.W.2d 225; Keeley Lumber & Coal Co. v. Dunker, 76 S.D. 281, 77 N.W.2d 689; Rogers v. Penobscot Mining Co., 8 Cir., 154 F. 606. The Tests were proper parties and could have been joined either as plaintiffs or defendants, SDC 1960 Supp. 33.0409, but we do not believe they were either necessary or indispensable parties. It is only when a complete determination of the controversy cannot be had without the presence of a third party that such party is necessary or indispensable. Keeley Lumber & Coal Co. v. Dunker, supra; Cottrell v. Prier, 187 Or. 454, 212 P.2d 87. Even then such party may be added by order of the court on motion of any party or of its own initiative at any stage of the action. SDC 1960 Supp. 33.0411. Time was not of the essence. The contract recognizes delays incidental to final performance. The Tests were required to accept at any time the balance remaining unpaid on their contract and issue a warranty deed to plaintiffs. L. M. Test was a witness for plaintiffs. He acted as plaintiffs' agent in showing the ranch to defendants and pointed out its boundaries. This was the controversy between the parties as revealed by the notice of rescission, pleadings, and transcript of the evidence. For this reason defendants requested affirmative relief and asked for a cancellation of the contract. This defense was not established and such relief was

denied. We believe the facts and circumstances were such that the court prejudicially erred in failing to exercise its statutory and equitable powers by either bringing the Tests into the action on its own motion, or allowing the plaintiffs a reasonable time to obtain and produce in court a warranty deed from the Tests to plaintiffs and to perform other acts contemplated by the contract. It is generally recognized that enforcement of a contract will not be denied because the consent of a third person is necessary to performance, where it reasonably appears that such third person does or will consent. Rice v. Theimer, 45 Okl. 618, 146 P. 702; Goldsworthy v. Dobbins, 110 Cal.App.2d 802, 243 P.2d 883.

Interlocutory decrees are recognized in and adaptable to specific performance actions. Marso v. Heck, 50 S.D. 332, 210 N.W. 153; Goldsworthy v. Dobbins, supra; Moser v. Pearce, 124 Cal.App. 478, 12 P.2d 977; McKevitt v. City of Sacramento, 55 Cal.App. 117, 203 P. 132. Justice here requires such a decree to permit the parties to effectuate the contract which they made. We reverse the judgment and remand the case to the trial court with directions to proceed in conformity with the views herein expressed.

All the Judges concur.