**AGRISTOR LEASING, Plaintiff,**

v.

**LaVerne STORLEY and Shirley Storley, Defendants.**

**No. 88-1049.**

United States District Court, D. South Dakota, N.D.

Nov. 29, 1989.

William D. Hull, Timmer & Van Vliet, Minneapolis, Minn. and Robert E. Hayes,

Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiff.

Carlyle E. Richards, Ronayne & Richards, Aberdeen, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

### I. BACKGROUND.

On April 28, 1980, the plaintiff, Agristor, and defendants LaVerne and Shirley Storley (the Storleys) entered into a lease agreement whereby the Storleys leased certain agricultural equipment from Agristor. The Storleys made all of the monthly rental payments required by the lease agreement. The lease agreement expired on May 15, 1988 and the Storleys have made no payments to Agristor since that date.

Paragraph 17 of the lease agreement provides an option to purchase the leased equipment for fair market value at the end of the lease term. If the parties cannot agree on the fair market value, it is to be determined "by an independent appraiser selected by the lessor, but satisfactory to the lessee." The Storleys gave timely notice to Agristor of their intention to exercise the option to purchase the equipment, but the parties could not agree on the fair market value of the equipment. The Storleys rejected two appraisers suggested by Agristor and requested that a local appraiser be appointed. Agristor then instituted this lawsuit on November 17, 1988, invoking the jurisdiction of the Court under 28 U.S.C. § 1332. Agristor alleged that the Storleys defaulted under the terms of the lease by unreasonably rejecting the appraisers selected by Agristor.

The parties eventually agreed upon and selected an appraiser to determine the fair market value of the equipment. However, two issues remain to be decided: 1) whether Agristor is entitled to holdover rents from May 15, 1988, the date the lease terminated, through the date that the equipment is finally purchased by the Storleys, and 2) whether Agristor is entitled to re-cover its attorneys' fees incurred in prosecuting this action.

Upon agreement by counsel, on August 29, 1989 the Court ordered that this action be submitted to the Court for decision on a set of stipulated facts, and that each counsel submit a brief in support of his position. Because this is a diversity case, South Dakota law controls.

### II. HOLDOVER RENTS.

Agristor claims it is entitled under the lease to holdover rents of $2,244.51 a month from the lease expiration date [May 15, 1988] to the end of the month in which the Storleys paid for the equipment. The lease contains no provision for rent other than the Storley's agreement to pay Agristor rent in 96 consecutive monthly payments of $2,244.51 commencing June 1, 1980, and continuing to and including May 1, 1988.

In Agristor's post-trial brief submitted on September 14, 1989 Agristor states that the lease agreement in question expired on May 15, 1988. However, Agristor then goes on to argue that the parties should continue to be treated as a lessor and lessees. By arguing that the Storleys must pay rent for possession and use of the equipment while the fair market value is being determined, Agristor is ignoring the fact that the equipment lease expired and a new legal obligation arose between the parties. After an option to buy has been duly exercised, the existing unilateral contract becomes a bilateral contract. Corbin, *Corbin on Contracts*, § 264 (1963); *cf. Crowley v. Texaco*, 306 N.W.2d 871 (S.D.1981) (option to purchase real estate becomes enforceable bilateral contract when timely exercised); *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312 (S.D.1980); *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964).

Paragraph 17 of the lease agreement provides that the option to purchase the equipment may be exercised by written notice delivered to lessor not less than ninety days prior to the end of the term.[1] The

---

1. Paragraph 17 of the lease agreement provides:

**17. OPTION OF PURCHASE.** Provided that this Lease has not been earlier terminated

lease agreement does not make payment a condition of the acceptance of the option, and thus Agristor's offer to sell the equipment was accepted by the Storleys on December 15, 1987 when the Storleys notified Agristor in writing of their intention to buy the equipment. On that date, a binding executory contract of sale became effective between Agristor and the Storleys.

Upon acceptance of the offer to sell the equipment, the Storleys became obligated to pay Agristor a sum equal to the fair market value of the equipment and Agristor became obligated to deliver the ownership of the equipment to the Storleys. The lease agreement explicitly states that if the lessor and lessee cannot agree on the fair market value of the equipment, the fair market value is to be determined "by an independent appraiser selected by lessor but satisfactory to lessee." There is no provision in the lease agreement requiring the optionee to pay rent for the equipment while its fair market value is being determined, nor is there a time limit placed on the selection of an appraiser. Courts cannot remake contracts or imply provisions through judicial interpretation. *See In re Stevenson Associates, Inc.*, 777 F.2d 415 (8th Cir.1985). The Storleys cannot be held liable for holdover rents pending determination of fair market value absent a provision in Agristor's contract.

## III. ATTORNEYS FEES.

Paragraph 15 of the lease agreement provides that the lessor shall be entitled to recover its attorneys fees and disbursements in enforcing its rights under the lease. Agristor contends that it commenced this action to enforce the appraisal provisions of the lease set forth in Para-

graph 17 and thus is entitled to recover the attorneys fees incurred in prosecuting this action according to Paragraph 15 of the lease. Agristor argues that the Storleys' rejection of two suggested appraisers because they were not from defendants' area was a breach of the implied covenant of good faith and constituted a breach of the lease agreement.

■ The record indicates that the Storleys made a good faith exercise of reasonable judgment when they rejected the appraisers suggested by Agristor. The Court cannot find that the Storleys breached the implied covenant of good faith simply because they believed it important to have a local appraiser. *See e.g., Richard Short Oil Co., Inc. v. Texaco, Inc.*, 799 F.2d 415, 422 (8th Cir.1986) (Court said that if no real possibility of a prohibited state of mind is shown, the mere conclusory allegation of bad faith would be insufficient to defeat a directed verdict motion). Paragraph 17 of the lease provides that the lessor shall select an appraiser "satisfactory to the lessee". Agristor suggested the names of two Sioux Falls area residents. The Storleys rejected those appraisers and requested the appointment of an appraiser from their part of the state who would be more familiar with the state of the local farm economy. The Storleys even suggested the name of a local independent appraiser. Rather than reply to the Storleys' suggestion, Agristor chose to institute this lawsuit.

Agristor brought to the Court's attention that it has in excess of 5,000 lease agreements in forty-four states and to require Agristor to select an appraiser in each county in which its leased equipment is located would place an unrealistic and un-

---

and that no default under this Lease has occurred and is continuing, Lessee may, by written notice delivered to Lessor not less than ninety (90) days prior to the end of the term or any renewal term pertaining thereto, elect to purchase all, but not less than all, the Equipment at the end of such term for a purchase price equal to the Fair Market Value of all such Equipment as of the end of such term. Fair Market Value shall mean and shall be determined on the basis of and shall be equal in amount to the value which should

obtain in an arm's length transaction between an informed and willing buyer-user (other than (i) a lessee currently in possession and (ii) a used equipment dealer) and an informed and willing seller under no compulsion to sell. Such Fair Market Value is to be determined by agreement between Lessor and Lessee, or, if they cannot agree, by an independent appraiser selected by Lessor but satisfactory to Lessee. The cost of any such appraisal shall be borne equally by Lessor and Lessee.

necessary burden on Agristor. However, the fact that Agristor has 5,000 lease agreements throughout the country does not support a claim that the Storleys acted in bad faith.

The only evidence that Agristor submits to support its claim of bad faith is the contention that the Storleys had no basis for requesting an appraiser who resided in their area of the state. However, the depositions of Mr. Hobson and Mr. Holles, the two appraisers selected by Agristor, show that the Storleys may have had a reasonable basis for believing it was important to have a local appraiser.[2]

Regardless of whether the Storleys' preference for an appraiser from their area of the state was a reasonable basis for rejecting the two appraisers suggested by Agristor, there is no evidence of "conscious indifference, willfulness, or wantonness" on the part of the Storleys in rejecting the appraisers so as to take advantage of Agristor. *Richard Short Oil Co., Inc. v. Texaco Inc.*, 799 F.2d at 420. In fact, in an appearance before the Court, the Storleys' attorney suggested two alternative ways for the parties to agree upon and select an independent appraiser, indicating the Storleys' good faith intent to resolve the dispute. [Agristor rejected both proposals.] Without proof of bad faith on the part of the Storleys, Agristor cannot recover attorneys fees incurred in prosecuting this case.

## IV. CONCLUSION

An award of holdover rents would be inappropriate in this case because the contract, written by Agristor, does not provide for Agristor to recover rent while the fair market value of the equipment is being determined. An award of attorneys fees would also be inappropriate because the record does not indicate that the Storleys breached an implied covenant of good faith by rejecting the two appraisers. Accordingly, Agristor's requests for holdover rents and attorneys fees are denied.

---

**2.** The following is an excerpt from the deposition of Mr. Hobson, a real estate appraiser from Sioux Falls, South Dakota selected by Agristor to determine the fair market value of the equipment.

Q. And what would be the factors? You know, hypothetically, what would be the factors that would influence such fair market value from a locational point of view?
A. Well, again, it would be the demand for *the equipment in a given area,* and the availability of competing equipment in the same area.

Q. And are you familiar enough with the— with the—well, I guess I will say the situation in South Dakota, to describe the areas that might have more or less demand for this kind of equipment?
A. I don't think without studying a given local market, no.
Q. And, again, the local economy would make a difference, too, wouldn't it?
A. Yes.