TARPINIAN et al., Respondents v. WHEATON, Appellant

(113 N.W.2d 472)

(File No. 9933. Opinion filed February 23, 1962)

Rehearing denied March 29, 1962.

**Potter & Crabb,** by **John G. Potter,** Rapid City, **Francis J. Parker,** Deadwood, for Defendant and Appellant.

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Plaintiffs and Respondents.

SMITH, J. A contract for deed, executed by Hal D. Wheaton and Violet Wheaton, husband and wife, as vendors, obligated the purchasers named therein to pay the purchase price of the property, title to which was vested in the husband, to the husband and wife. Thereafter the husband was adjudged bankrupt, and the plaintiffs above named purchased whatever interest remained in the husband at a sale in bankruptcy. Thereupon the plaintiffs instituted this action to determine adverse claims to the property and named the husband and wife as defendants. In her answer and counterclaim the wife asserted an undivided one-half interest in the property. After issues joined, the matter was tried to the court and resulted in findings, conclusions and judgment adverse to the wife. She has brought the cause here for review.

The property originally involved is commonly referred to as the "Hill City Zoo" and is located in Pennington County, South Dakota. It consists of approximately 104 acres of land, the structures and equipment located thereon, a stock of variety merchandise, and about 153 different spe-

cies of animals. This property and business had been owned and operated by the husband for a period of years. Violet Wheaton became connected with the business several years before their marriage which occurred in June 1954. When she first was employed, she acted as a saleslady in the variety store. Eventually she became active in every branch of the business, including buying of merchandise, care of the animals, and in training others to feed and care for the animals. In off season she cooked for the help. After their marriage, the Wheatons established their home in an apartment located on the property and it became and continued to be their homestead. The record reveals that money borrowed by Wheaton from Mrs. Wheaton before and after their marriage, which was used in the business, was eventually evidenced by a single promissory note in the principal sum of $2265.

In 1956 negotiations were initiated looking towards a sale of the business and property to Ivan and Gladys Pray. Both of the Wheatons testified to conversations between themselves during the period of these negotiations in which it was said he would engage in the real estate business with his half of the proceeds and she would open a variety store with her half of those proceeds. According to their testimony these conversations were carried on in part before the Prays at the Zoo and also in the office and presence of the attorney who represented the Wheatons in contracting the sale. That testimony stands undisputed.

The contract for deed is dated July 31, 1956. It is executed by both of the Wheatons, who are designated therein as vendors and are described as husband and wife. It provides for immediate transfer of the personal property by bill of sale, for possession of the real property by the purchaser, and for a purchase price of $90,000, payable $5,000 in cash, $15,000 by the transfer by the purchasers to the vendors of three Rapid City residence properties, and the balance in $7,000 annual installments with interest. It also provides that the

"Vendors shall execute, concurrently with the execution of this Agreement, a warranty deed, with documentary stamps thereon, conveying said real property to Vendees, and said warranty deed together with an original of this contract shall be placed in escrow in the First National Bank of the Black Hills, Rapid City, South Dakota, office and payments as herein provided to be made by Vendees to Vendors shall be made at said bank to the credit of Vendors, * * *."

At a later date, both the husband and wife, under the designation of vendors, joined in a supplementary agreement with the vendees reducing the purchase price.

On the 16th day of October 1956, Ivan Pray and Gladys Pray as grantors, by their warranty deed, conveyed one of the Rapid City residence properties described in the contract to Hal D. Wheaton and Violet Wheaton as grantees, and on January 10, 1957 by two like deeds they conveyed the other two Rapid City residence properties to Hal D. Wheaton and Violet Wheaton as grantees.

No claim is made that Hal D. Wheaton was insolvent at the time of the execution and delivery of the described contract for deed, or that he was thereby rendered insolvent. The evidence indicates he was then a man of considerable wealth. However, during the following year he was involved in an automobile accident as the outgrowth of which there developed litigation resulting in judgments by the plaintiffs above named and against him in the aggregate principal sum of $95,000. Thereafter he filed a voluntary petition and was adjudged bankrupt. As indicated the title of plaintiffs rests on a conveyance by Wheaton's trustee in bankruptcy. The parties have stipulated that plaintiffs acquired only such interest in the property as remained in Hal D. Wheaton.

The trial court found:

"That the defendant, Violet Wheaton, has in-introduced no competent evidence showing any

right, title, or interest in her to the hereinbefore described real and personal property"

and entered judgment decreeing that she be

"forever debarred, enjoined. and foreclosed from claiming or asserting any right, title, or interest in, * * * said real and personal property adverse to the plaintiffs or to those who may hereinafter claim through or under the plaintiffs and title thereto is hereby quieted in said plaintiffs."

The central assignment of Violet Wheaton questions the sufficiency of the evidence to support the findings, conclusions and judgment of the trial court.

On the one hand there is no contention in this court that the record establishes a transfer of legal title to the property from the husband to the wife. On the other hand there is no contention here that the record is sufficient to establish any right in the plaintiffs, as subsequent creditors of Hal Wheaton, to attack the contract for deed described as fraudulent. The contention of the plaintiffs is that the contract for deed was not intended to clothe the wife, Violet Wheaton, with any right in, a lien on, or an equitable claim of any kind in the property.

In support of that position and of the decision of the trial court, counsel for plaintiffs advance two rules they would have us apply in arriving at a decision. They point to Hendricks v. Wolf, 279 Mich. 598, 273 N.W.282, wherein it was held that in the absence of a showing to the contrary, a wife who has executed a contract dealing with real property, title to which rested in her husband, will be presumed to have joined with her husband in the execution thereof solely for the purpose of barring her inchoate rights of dower. Cf. 41 C.J.S. Husband and Wife § 153(2), p. 629. Then because of the uncontradicted testimony of the Wheatons, to which we have made reference supra, they urge the rule that the trier of the fact is not bound by uncontradicted testimony which is grossly improbable. Beka v. Lithium Corporation, 77 S.D. 370, 92

N.W.2d 156; Jorgenson v. Jorgenson, 74 S.D. 239, 51 N.W.2d 632; and Crilly v. Fitzsimmons, 73 S.D. 646, 48 N.W.2d 62.

Assuming, without so deciding, that, in some circumstances, it might be soundly inferred a wife had joined with her husband in executing a contract for deed, dealing with his real property, solely for the purpose of waiving her homestead privilege, and granting a trier of fact is not bound to accept grossly improbable uncontradicted testimony, and especially when such testimony comes from the lips of persons having an interest in the outcome of litigation, we are nevertheless convinced that these rules are without controlling significance in the circumstances established by this record.

■ Because the contract for deed deals with homestead property, it is not at all surprising that the draftsman sought thereby to obligate both husband and wife to execute and deliver a deed. However, that fact loses much of its significance when it is viewed against the background of the whole uncontradicted evidence presented to the trier of the fact. The relationship of Mrs. Wheaton to the Hill City Zoo, according to the record, was not just that of a wife. For a period of years, including years before and after her marriage, she not only had loaned Wheaton money which he invested in the operations of the business, but she so gave of herself and energies to that business as to have become an active participant in every phase of its operations. In other words she played, at least, a substantial role in creating and maintaining a going business for which the Prays were anxious to contract to pay a considerable sum. The extended negotiations by which that sale was consummated were participated in by both families. During this period, according to their testimony, the Wheatons arrived at an understanding that the proposed proceeds would be equally divided between them. It is the truth of this testimony we understand counsel to view with askance and as grossly improbable. However, whatever suspicion attaches to that testimony is mitigated by the solid support it receives from inescapable uncontradicted facts to which

we now turn. With counsel in attendance, the husband voluntarily executed and there was delivered between the Wheatons and the Prays this contract for deed by which the Prays became obligated to convey exchange property, not to Wheaton alone, but to Wheaton and Mrs. Wheaton, and to pay the balance of the purchase money to an escrow bank, to the credit not of the husband alone, but to the credit of himself and wife. Moreover, within weeks thereafter Wheaton, as performance of one of the above described provisions of the contract, accepted delivery of conveyances of the exchange real property in which he and his wife are named as grantees. It should be remarked in passing that testimony indicated the initial $5,000 cash payment was required to comply with the Bulk Sales Act, SDC 54.0301 et seq. From the whole evidence, we are persuaded the inference is impelled that by this contract the husband intended to make a provision for his wife by creating an interest in her in the proceeds to arise therefrom. The uncontradicted evidence is that he intended she should share equally with him in those proceeds.

■ ■ It is settled that a vendor, after execution and delivery of such a contract for deed, holds the legal title in trust for the benefit of the purchaser, and under an obligation to convey when the purchaser has acquired a right to be vested with title. Reid v. Gorman, 37 S.D. 314, 158 N.W. 780; and Phillis v. Gross, 32 S.D. 438, 143 N.W. 373. Elsewhere it has been held that if he thereafter assigns the contract for deed, but retains the title, he thereupon holds the title as trustee for both the purchaser and the assignee of the contract. Foster v. Lowe, 131 Wis. 54, 110 N.W. 829; 92 C.J.S. Vendor and Purchaser, § 310b.(1), p. 190; 55 Am.Jur., Vendor and Purchaser, § 450, p. 855. Like equitable considerations dictate a holding here that from the delivery of the contract for deed among its parties, the husband-vendor held the legal title in trust, not only for the purchaser, but, to the extent of her interest in the purchase proceeds, for the wife. Of course, that trust follows with the title, and the plaintiffs now hold the legal title in trust for the purchaser and the wife. 92

C.J.S. Vendor & Purchaser § 310b.(1), p. 190.

█ Contrary to the terms and spirit of SDC 1960 Supp. 33.0743, the brief of appellant includes unnecessary pages devoted to printing assignments of error and quotation of questions and answers from the transcript. Therefore, the court has determined that all but 15 pages thereof shall be considered as rejected in taxing costs. SDC 1960 Supp. 33.0753.

The judgment of the trial court is reversed.

All the Judges concur