WARD, Appellant, v. MELBY, Respondent

(142 N.W.2d 526)

(File No. 10256. Opinion filed May 12, 1966)

**Donn Bennett,** Buffalo, for plaintiff-appellant.

**Hanley, Costello & Porter,** Rapid City, for defendant-respondent.

RENTTO, Presiding Judge.

In this action plaintiff seeks specific performance of an oral contract to will property to her in return for services rendered by her to the decedent Cora Glaster, or in the alternative to recover

for such services on a quantum meruit basis. Upon trial to the court judgment was entered dismissing on its merits plaintiff's complaint insofar as it demanded specific performance of the agreement to will property, but granting her $600 for services rendered by her to the decedent. From this judgment plaintiff appeals.

Cora Glaster was the owner of a quarter section of Harding County land on which she and her mother made their home until the death of the mother in 1943. After that she lived there alone. She died on January 12, 1960, the owner of this quarter section of land and some personal property of little value. At the time of her death she was 79 years old. Shortly after her death a will formally executed by her on June 7, 1950, was presented for probate by the plaintiff.

This will left decedent's property to the plaintiff and designated her as executrix. Opposition to the admission of this will to probate was filed by Frances Melby, a first cousin of the decedent, the basis of which was that the decedent had executed a later will revoking the one which had been presented for probate. This instrument was an olographic will dated February 15, 1957, which directed that the farm be sold and after the payment of her debts and a small bequest the residue was to go to Frances Melby.

When the olographic will was offered for probate plaintiff contested it urging in opposition the oral contract which she claimed decedent had made with her. At this point the judge of the county court before whom the matters were pending, disqualified himself and the circuit judge took over in his stead. Counsel then agreed that the first will be withdrawn and the olographic will admitted to probate and that the validity of plaintiff's claimed contract be adjudicated in this proceeding.

The attorney who prepared the June 7, 1950 will testified decedent asked him to draft a will leaving her property to the plaintiff and that she said plaintiff had been taking care of her and she was going to take care of the plaintiff. However, other than the above, nothing was said about the existence of any agreement or the terms thereof. Plaintiff stated that the decedent

brought this will to her home in June of 1950 and told her she wanted the plaintiff to "help her with the washing, do her farming, and cleaning, whenever she needed money, or give her groceries and money and things like that." Concerning this will there is testimony in the record that decedent referred to it as her "foolish will" and intimated strongly that plaintiff had stolen it from her. In fact at times she told other people she was going to leave her property to them, or at least remember them in her will.

Plaintiff and her family lived on and operated a farm located about one-half mile from the decedent's farm home. For years they had been good friends and neighborly, exchanging help on a gratuitous basis. Her testimony and that of the other witnesses for her related generally the many things she and the members of her family had done for the decedent in the last ten years of her life. It was plaintiff's contention that these acts were done in carrying out her agreement with the decedent. During the last six weeks of decedent's life she was gravely ill and during that time lived in plaintiff's home and was cared for by her there. Other than this period decedent lived in her own home except during such times as she was away visiting or being cared for in a hospital.

The witnesses for the defendant related how they and the other neighbors had during this period done things for the decedent much as the plaintiff without request or expectation of payment. The general tenor of their testimony was that the farming community in which decedent lived more or less took it upon itself to look out for her. Much of the farming that was done for her was done for a share of the crop. None of them had ever heard decedent or anyone else say anything about the agreement which plaintiff claimed with the decedent. Some of them testified decedent had told them she did not want to be in debt to the plaintiff's family and that she had paid them for the services rendered by them to her and had receipts to prove it, some of which were put in evidence.

The court found that "The evidence in this case will not support the factual conclusion that any agreement existed whereby

Cora Glaster, deceased, ever agreed, with plaintiff, to devise to plaintiff the premises and personal property herein in return for services performed by plaintiff before and after June 7, 1950," and expressly found that no agreement as claimed was entered into. It further found that the evidence in reference to the claimed agreement was so "vague and indefinite both as to the agreement itself and the conditions of performance thereof" as to render it incapable of specific performance. Plaintiff's assignments of error take issue with these findings.

This court has held that the correct rule in specific performance cases is that the contract with all its material terms and conditions must be proved by evidence so clear and satisfactory to the mind of the trial court as to leave no doubt as to the agreement. Crawford v. Carter, 74 S.D. 316, 52 N.W.2d 302. Our decisions establish that this is the rule when the contract in question is one to adopt another as his child thus permitting the child to share in the estate of an adoptive parent. Johnston v. Eriksson, 71 S.D. 268, 23 N.W.2d 799. It also governs in cases seeking the specific performance of an oral contract to devise or bequeath property. Troutman v. Bock, 67 S.D. 569, 295 N.W. 637. This is the burden of the one asserting the contract and as pointed out in the Johnston case under this rule relief should be cautiously granted and each case must rest on its own facts.

Whether a party having the burden of proof on an issue has sustained it is determined by the trial court, Hilde v. Flood, 81 S.D. 25, 130 N.W.2d 100, as is the question whether the proof in a given case measures up to the required degree of persuasiveness. Brown v. Warner, 78 S.D. 647, 107 N.W.2d 1. In either situation we may disturb the trial court's findings only if the evidence preponderates against its determination. A careful examination of the record herein convinces us we are unable to do so in this case. The record when viewed in a light favorable to the court's determinations furnishes ample support for its findings.

In its memorandum opinion the trial court made this observation:

> "The weakness of plaintiff's case is indicated by the failure of any of the neighbors, including her son, to have any knowledge of any such agreement she alleges during the years when they were in contact with both parties. The only testimony regarding any agreement comes from plaintiff herself and her testimony is indefinite with regard to the terms and conditions of performance required of her."

Plaintiff argues that the court erred in admitting such negative testimony and then using it as a basis for its determination. As supporting this contention she cites Hanson v. Fiesler, 49 S.D. 442, 207 N.W. 449.

■ ■ That case merely holds that the negative testimony sought to be there introduced was properly excluded as not being rebuttal evidence. If the testimony here challenged was improper rebuttal this ground the plaintiff waived by her objection which was only that the question called for negative testimony. State v. Leehman, 2 S.D. 171, 49 N.W. 3; Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147. While positive testimony is generally to be preferred to negative testimony, "negative testimony is admissible, and together with corroborating circumstances, it may outweigh positive testimony." Jones on Evidence, 5th Ed., § 986 citing Lighthouse v. Chicago, M. & St. P. Ry. Co., 3 S.D. 518, 54 N.W. 320.

In its memorandum opinion and in its findings of fact the trial court stated there was not such part performance as would permit the enforcement of the contract in view of the Statute of Frauds, SDC 10.0605. This is questioned by the plaintiff. Since the court properly determined there was no contract we do not reach this question.

The allowance to the plaintiff of $600 is based on the court's finding that the services rendered by plaintiff to decedent during her last illness were not rendered gratuitously and that an agreement to pay therefor is implied in law. It further found such services continued for a period of six weeks and their reasonable value was $100 per week. She does not quarrel with

this allowance, but claims only that the court granted an inconsistent judgment in allowing for these services and not for the others she claimed to have rendered. Defendant has not questioned this award.

 Where services are rendered by one person for another and voluntarily accepted, an obligation to pay compensation will ordinarily be implied. Mahan v. Mahan, 80 S.D. 211, 121 N.W.2d 367. However, a promise to pay is not implied if the services were intended to be gratuitous. Hofer v. Bon Homme Hutterian Brethren, Inc., 79 S.D. 150, 109 N.W.2d 258. It is apparent the trial court was of the view the plaintiff rendered these other services gratuitously and denied recovery for that reason. This conclusion is one the court could rationally draw from the evidence.

It follows that the judgment appealed from must be and is affirmed.

All the Judges concur.