**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF STORM LAKE, Plaintiff and Appellee,**

v.

**Jack H. LOVETT, Virginia M. Lovett, Robert L. Friessen, and Sharon R. Friessen, Defendants and Appellants,**

**VBJ Investors and Minnehaha County, South Dakota, Defendants.**

**No. 13444.**

Supreme Court of South Dakota.

Considered On Briefs Feb. 23, 1982.

Decided April 14, 1982.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee; Charles D. Gullickson of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

John L. Wilds, Sioux Falls, for defendants and appellants.

HENDERSON, Justice.

ACTION

Appellants Jack H. Lovett, Virginia M. Lovett, Robert L. Friessen and Sharon R. Friessen appeal from a judgment of the trial court in favor of appellee First Federal Savings and Loan Association of Storm Lake. This judgment awarded appellee $390,075.42, said amount to be taken from the sale of certain property to which appellee was the mortgagee and appellants the mortgagor. We affirm.

FACTS

Appellee is a federally chartered savings and loan association located in Storm Lake,

Iowa. Appellants Jack H. Lovett and Robert L. Friessen undertook to construct and develop a "strip mall" on a certain section of property that they owned in Sioux Falls, South Dakota. Financing for this venture was provided by First Services Mortgage Corporation of Sioux Falls (First Services), which is a wholly owned subsidiary of appellee.

First Services loaned appellants $400,-000.00 to finance the mall and in return appellants, on January 20, 1978, executed to First Services a promissory note for $400,-000.00 and a mortgage on the property where the mall was located. This mortgage contained the following provision:

> Said Mortgagors further agree if all or any part of the property or an interest therein is sold or transferred by Borrower without Lenders prior written consent Lender may, at Lenders option, declare all the sums secured by this mortgage to be immediately due and payable.

Also, prior to providing the financing for the mall, First Services sent to appellants Jack H. Lovett and Robert L. Friessen a written notice stating that the loan could not be assumed by a subsequent purchaser of the mortgaged premises without the prior written consent of First Services.

The trial court specifically found that appellants were aware that the above-quoted "due on sale" clause was incorporated into the mortgage agreement prior to its execution and also knew the contents of said clause. On January 20, 1978, First Services assigned the aforementioned note and mortgage to appellee. This assignment was properly recorded.

Appellants wrote to First Services on September 17, 1979, seeking its consent to the sale of the mortgaged property by a contract for deed. First Services received another letter from appellants on September 27, 1979, which also requested its consent to the sale. This letter was accompanied by unaudited and unrequested financial statements of VBJ Investors, the proposed purchaser; VBJ was a defendant at the trial court level. On September 28, 1979, appellants Jack H. Lovett and Robert

L. Friessen, as tenants in common of the mortgaged property, sold the property to VBJ on a contract for deed. That same day appellants Jack H. Lovett and Robert L. Friessen entered into a contract with VBJ to sell the mall to VBJ. This contract contained a provision which provided that the sellers were obligated to legally contest any acceleration by First Services or appellee based on the sellers' failure to obtain prior written consent to the sale.

On October 5, 1979, appellee wrote appellants informing them that it would not give its consent to the sale and that it would declare all sums secured by the mortgage immediately due and payable if the sale occurred. Because appellants proceeded with the sale, appellee on October 23, 1979, gave notice of default and intent to foreclose, thereby exercising its right to accelerate granted under the due on sale clause. Appellants refused to make payment in full on the note and mortgage and, consequently, appellee initiated this action.

## ISSUES

### I.

Did appellee's noncompliance with SDCL 47-8-30 preclude it from foreclosing the mortgage executed by appellants? We hold that it did not.

### II.

Did the contract for deed between appellants and VBJ constitute a transference of the mortgaged property thereby triggering the due on sale clause? We hold that it did.

### III.

Can appellee enforce the due on sale clause herein involved absent a showing of security impairment? We hold that it can.

## DECISION

### I.

 Appellants contend that appellee's noncompliance with SDCL 47-8-30 pre-

cludes it from foreclosing the mortgage executed by appellants. SDCL 47–8–30 provides:

No foreign corporation doing or engaging in any business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority. Nor shall any action, suit or proceeding be maintained in any court of this state by any successor or assignee of such corporation on any right, claim or demand arising out of the doing or engaging in of any business by such corporation in this state, until a certificate of authority shall have been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets.

This Court has held, however, that a note and mortgage relating to an out-of-state business enterprise, but securing property within the state, can be sued upon by the foreign corporation which has not complied with the statutory provisions relating to foreign corporations. *Charles Friend & Son v. Schmidt*, 57 S.D. 477, 233 N.W. 913 (1930); *see Thurston v. Cedric Sanders Company*, 80 S.D. 426, 125 N.W.2d 496 (1963); *General Motors Acceptance Corp. v. Huron Finance Corp.*, 63 S.D. 597, 262 N.W. 195 (1935). Thus, under the situation presented here, appellee's failure to comply with SDCL 47–8–30 is not fatal to its foreclosure action.

## II.

■ Secondly, appellants maintain that the contract for deed between themselves and VBJ did not constitute a transference of the mortgaged property and, accordingly, did not trigger the due on sale clause. We do not agree. The clause provided that "if all or any part of the property or an interest therein is sold or transferred" without the lender's consent, the lender may accelerate. This Court recently dealt with this issue in *First Federal Savings & Loan Ass'n, Etc. v. Kelly*, 312 N.W.2d 476, 481 (S.D.1981):

In a contract for deed such as we have here, the installment vendor (Kelly) is said to maintain legal title to the property while the vendee (Hawk) holds equitable title and has the right to use and possession of the property. *State Highway Commission v. Miller*, 83 S.D. 124, 155 N.W.2d 780 (1968); *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964); *Zent v. Zent*, 281 N.W.2d 41 (N.D.1979).

Our application of this principle leads us to agree with the Supreme Court of Wisconsin when it held that even though a contract for deed only transfers equitable title to the vendee, this is a sufficient conveyance to trigger the mortgagee's rights as provided for in a due on sale clause. *Mutual Federal Savings & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis.2d 99, 205 N.W.2d 762 (1973); *see also Williams v. First Federal Savings & Loan Ass'n of Arlington*, 651 F.2d 910 (4th Cir. 1981); 69 A.L.R.3d 713, § 10[b] (1976). In accord with *Kelly*, we hold that the contract for deed herein involved effectively triggered the due on sale clause found within the mortgage.

## III.

■ Appellants further contend that appellee may not foreclose its mortgage without first proving that its security would be impaired due to the sale of the mortgaged property. Again, this same issue was raised in *Kelly* wherein we held:

It is clear by these statutes [SDCL 21–49–13(7), SDCL ch. 43–5] that our State Legislature has specifically considered the policy considerations involved in a due on sale clause and has allowed for the inclusion of such in a mortgage agreement. Under the existing law of this state, then, no impairment of security by the lender is necessary for it to require the borrower to accelerate payment under an enforceable due on sale clause.

*Id.* at 479. Accordingly, under the mortgage presented here, we hold that no impairment of security need to be shown prior to appellee enforcing the due on sale clause.

All remaining issues proffered by the parties were either not raised at the trial court level, *Weaver v. Boortz*, 301 N.W.2d 673 (S.D.1981), are nonmeritorious, or need not be addressed due to the dispositive nature of our decision.

The judgment of the trial court is affirmed.

All the Justices concur.