J. Michael O'BRIEN and Paula K. Lewis, Plaintiffs and Appellees,

v.

R–J DEVELOPMENT CORPORATION, a corporation, and Emma D. Richards, Defendants and Appellants.

Nos. 15066, 15078.

Supreme Court of South Dakota.

Considered on Briefs on Rehearing Sept. 17, 1986.

Decided Dec. 17, 1986.

James H. Wilson of Wilson, Olson & Nash, P.C., Rapid City, for plaintiffs and appellees.

Robert W. Gunderson of Gunderson, Farrar, Aldrich & Demersseman, Rapid City, for defendants and appellants.

MORGAN, Justice (on rehearing) (on reassignment).

This case is before us on a petition for rehearing. The petition deals with the part of our original decision that required petitioners to immediately exercise their future options to purchase real estate. Petitioners are J. Michael O'Brien (O'Brien) and Paula K. Lewis (Lewis), plaintiffs and appellees in the original appeal.

The procedural and factual backgrounds are set forth in great detail in our original opinion filed May 14, 1986. *See O'Brien v. R–J Development Corp.*, 387 N.W.2d 521 (S.D.1986) (*O'Brien I*). Briefly stated, this case involves a complex real estate sale with options to purchase further real estate at later times. The agreement is structured to allow O'Brien and Lewis to use the proceeds of the first phase to generate funds to exercise the first opinion. The sales of lots from the first option theoretically will generate funds to exercise the second option, and so forth.

Initially, we point out that all parties to this contract were experienced in real estate dealings. Richards is a real estate developer and holds large tracts of property. O'Brien and Lewis are real estate developers and real estate brokers. All parties were represented by experienced and competent counsel throughout the negotiations.

O'Brien and Lewis entered into an Offer and Agreement to Purchase with R–J Development Corporation by and through its president, Emma D. Richards (Richards). The agreement called for the execution of a contract for deed. Before a contract for deed could be executed by the parties, Richards backed out of the deal and this action was commenced seeking specific performance of the agreement. After trial to the court, a decision was entered granting

specific performance. As noted in the majority opinion in *O'Brien I*, the trial court found the Offer and Agreement to Purchase of October 3, 1983, was voluntarily signed and delivered. In addition, the agreement, within its four corners, established a meeting of the minds and embodied the complete understandings reached by all parties. The court further found that the language "[t]his is a preliminary offer to purchase" required all parties to enter into subsequent paperwork necessary to the incidental execution of the contract and that no party could unreasonably withhold approval of the final document necessary to consummate the transfer of property.

The trial court entered judgment granting specific performance, setting out in detail a contract for deed in conformity with the agreement of the parties. In *O'Brien I*, we affirmed the trial court's decree of specific performance but the majority also held that, by seeking specific performance, O'Brien and Lewis had exercised the options under the guise of mutuality of remedy. We now reverse that portion of the decision.

Initially, we point out that the action sought specific performance of the only contract that was in existence at the time of the commencement of the action, to-wit: the agreement. There was no contract for deed at that time. The trial court's decision was predicated on enforcing the agreement. The judgment effectuated the agreement by setting out the contract for deed outlined in the agreement. Richards had agreed to enter into this contract for deed, but later refused to follow through. In this regard, the majority opinion was one step ahead of the game, for, if O'Brien and Lewis had sought to enforce specific performance *of the option agreements*, the doctrine of mutuality of remedy would have been appropriately applied. However, in the posture of this action, they had no contract for deed with option agreements to enforce. They simply sought to enforce the agreement originally entered into, which required Richards to execute the contract for deed. All of the terms of the contract for deed were found by the trial court to be within the four corners of the agreement. All reference to options were merely a restatement of the provisions of the agreement.

> [I]f specific performance is ordered, the decree should nearly as possible require performance in accordance with the terms of the contract. (citation omitted) It does not follow, however, that a court of equity is required to enforce the contract completely, or not at all. Where it is possible to bring about substantial justice by adjusting the equities between the parties, a court of equity can grant relief.

*Ellison v. Ventura Port Dist.*, 80 Cal. App.3d 574, 583, 145 Cal.Rptr. 665, 670 (1978).

The authority cited in the original opinion to compel O'Brien and Lewis to immediately exercise their options is inapposite. The authorities, 71 Am.Jur.2d *Specific Performance* § 144 (1973), *Asbury v. Cochran*, 243 Ala. 281, 9 So.2d 887 (1942), *Standard Reliance Insurance Co. v. Schoenthal*, 171 Neb. 490, 106 N.W.2d 704 (1960), *Mutual Life Ins. Co. v. Stephens*, 214 N.Y. 488, 108 N.E. 856 (1915), and *Leadbetter v. Price*, 103 Or. 222, 202 P. 104 (1921), all deal with situations where the plaintiff brought suit *to enforce an option contract*. Situations presented in those cases indicate that the vendor was not living up to its option contract with the plaintiff, vendee. In those cases, the courts deemed the option exercised to avoid the vendor's claim that there was lack of mutuality. In other words, the courts were assisting the vendee in his attempt to force the vendor to abide by the terms of the option contract.

In this case, there is not one shred of evidence in the record to indicate that O'Brien and Lewis wish to exercise their options at this time. In fact, it appears quite plainly that they do not have the financial wherewithal to execute the options at this time. Richards, O'Brien, and Lewis were well aware of this and purposely structured the contract so the initial

phases would create cash flow to enable O'Brien and Lewis to exercise their options for the remaining real estate in the future.

We now determine that the trial court was correct in its treatment of the option provisions in its original judgment. We reverse that portion of our decision in *O'Brien I* holding otherwise and affirm the trial court's judgment with respect to the option provisions. Because of the lapse of time involved in the appellate process, which we attribute to the actions of Richards, we direct the trial court upon remand to enter an amended judgment and decree in conformity with the opinion in *O'Brien I,* as amended by this opinion, with the further provision that the closing date for the resultant judgment and decree shall take place on the thirty-first day following entry of the amended judgment and decree and at the time and place as previously specified in the original judgment and· decree.

WUEST, C.J., HERTZ, Circuit Judge acting as a Supreme Court Justice, and FOSHEIM, Retired Justice, concur.

HENDERSON, J., dissents.

SABERS and MILLER, JJ., not having been members of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (dissenting).

I continue to hew to the original majority opinion and the rationale of that decision with its supporting authorities.

A Petition for Rehearing seeks review of that portion of our decision which determined that Lewis and O'Brien had exercised the option provisions of the Offer and Agreement to Purchase by filing suit herein. This Court, by an Order dated June 24, 1986, through a majority vote of the Justices, granted the Petition for Rehearing, but limiting the issue thusly: Should the options contained in the Offer and Agreement to Purchase be deemed exercised under these pleadings and these facts and circumstances?

Essentially, Lewis and O'Brien believe that our previous decision is erroneous and yes, indeed, they want specific performance to be granted. But they want the options to be reinstated so that they have an *opportunity* to exercise the options *in the future.* Lewis and O'Brien cite not one single case wherein specific performance of an unexercised option was sought, or where specific performance of a contract containing future options was sought—and where a court then granted specific performance and gave the party seeking same the *opportunity* to exercise or not—the options in the future. The cases cited in *O'Brien I* have not been distinguished or contravened so far as this author is concerned.

The majority opinion, in my opinion, seeks to write around the mutuality of remedy which our Legislature directed by state statute. If one thinks about this basic principle, it is really not too hard to understand: Neither party to an obligation can be specifically compelled to perform unless the other party thereto has performed or is specifically compellable to perform. Thus, an unexecuted option is essentially a unilateral instrument which lacks the mutual elements of a contract and cannot be specifically performed.

This author notes the complaint of Lewis and O'Brien. It states that they are ready, willing, and able to perform all things required of them under the Offer and Agreement to Purchase and said complaint prays for specific performance of the contract between the parties. Important to my way of thinking is the fact that Lewis and O'Brien filed a Notice of Lis Pendis against *all* of the property covered by the Offer and Agreement to Purchase.

Emma Richards and R–J Development refused· to sell some lots to Lewis and O'Brien at the agreed upon price as set out in the "Offer and Agreement to Purchase." Lewis and O'Brien then commenced suit seeking that the agreement be specifically enforced.

However, the Agreement did not provide solely for the sale of lots. An option

clause, also included within the Agreement's provisions, is at issue. When Lewis and O'Brien requested specific performance, they thrust themselves (perhaps unknowingly) onto the horns of a dilemma. They were either to get the entire agreement, including options, or they were to get specific performance of the first twenty-two lots only, and lose the options for future purchases. The law affords no other choice. Lewis and O'Brien cannot be half in and half out—at their unilateral decision.

As was stated in *O'Brien I*, 387 N.W.2d 521, 527 (S.D.1986), in order to award specific performance, there must be mutuality of remedy. SDCL 21-9-4. Note that the majority opinion does not address this state statute. Thus, specific performance will not generally be awarded for "a contract which imposes a continuing obligation upon the person against whom the relief is sought while performance of its terms is optional with the party seeking relief...." 71 Am.Jur.2d *Specific Performance* § 27, at 44 (1973).

An unexecuted option, however, is a unilateral instrument which lacks the mutual elements of a contract, and cannot be specifically performed. *See O'Brien I*, 387 N.W.2d at 527, and the cases and authorities cited therein. Until an option is accepted, specific performance cannot be awarded. *See Miller v. Hiett*, 133 Colo. 576, 298 P.2d 394 (1956); *Sooey v. Zacharski*, 321 Mich. 351, 32 N.W.2d 479 (1948); *Standard Reliance Ins. Co. v. Schoenthal*, 171 Neb. 490, 106 N.W.2d 704 (1960); *Bobo v. Bigbee*, 548 P.2d 224 (Okla.1976); and *Lincoln Land & Dev. Co. v. Thompson*, 26 Utah 2d 324, 489 P.2d 426 (1971).

Filing suit for specific performance "is generally regarded as an exercise of the option and as supplying the element of mutuality...." 71 Am.Jur.2d *Specific Performance* § 144, at 187 (1973). When a party files suit for specific performance, he places himself under all the obligations of the contract and submits himself to the court's jurisdiction to compel him to perform, thus removing the freedom to refuse

performance. 71 Am.Jur.2d *Specific Performance* § 144. *See also Asbury v. Cochran*, 243 Ala. 281, 9 So.2d 887 (1942); *Johnson v. Elliot*, 123 Mont. 597, 218 P.2d 703 (1950); *Standard Reliance Ins. Co. v. Schoenthal*, 106 N.W.2d 704; *Mutual Life Ins. Co. v. Stephens*, 214 N.Y. 488, 108 N.E. 856 (1915); and *Leadbetter v. Price*, 103 Or. 222, 202 P. 104 (1921).

The majority avoids holding Lewis and O'Brien to the option on the following grounds: suit was brought to enforce the original "Offer and Agreement to Purchase," and at the time of commencement of suit, no option had been exercised. Although this is true, the majority opinion overlooks that the option was an inseparable part of said agreement which could not be specifically enforced unless the suit itself is seen as providing requisite option acceptance. They cannot be half in and half out as they unilaterally choose. Lewis and O'Brien were not entitled to select what they want to be bound by within the contract (partial specific performance); the law simply does not condone it and the majority opinion is legally untenable in its basic premise. Furthermore, Lewis and O'Brien deemed the contract an entity, not a fragmentary document, or contractual jigsaw puzzle. Since the decision in *O'Brien I*, which Lewis and O'Brien found satisfactory in part and unsatisfactory in part, they have shifted their conceptual legal position in this Court, witness their own original brief.

> The Options were also to generate a contract for deed and the Court properly included the required contract for deed clauses in the Options to avoid future language problems. *We submit that under the particular circumstances of this case that the options cannot be separated from the transaction and treated differently.* To hold that they be deemed exercised or unenforceable, and the contract for deed on the first 20 lots be enforceable, as appellants contend, would be contrary to the express agreement of the parties and would be grossly inequitable. The offer and

agreement to grant the options was not a naked promise. They were not naked options. *The options were an important part of the whole package.* The Court properly found that the options were an integral part of the transaction and included the option agreements in the Decree. As stated in the Memorandum Decision at SR79, Exhibit 11, was a document which, within its four corners, established that there was a firm and complete agreement reached by the parties. (Emphasis supplied mine.)

Plaintiffs-appellees' brief at 18–19. Lewis and O'Brien sued for specific performance of the *entire* Agreement, and this they received in *O'Brien I.*

Here, it was R–J Development's and Emma Richards' wrongful repudiation of the consummated Offer and Agreement to Purchase which led to this land sale litigation which has lasted for nearly three years. During this time, Lewis and O'Brien have lost the use of three selling seasons and it appears that financing could have been jeopardized. It appears on rehearing, however, that R–J Development and Richards contend, via our prior decision, that two and one-half years' interest is due on the option provisions. To adjust the equities and bring about substantial justice, however, this Court should direct the trial court to fashion its judgment and decree so that all of the parties' duties and obligations, including payments and the running of interest, will begin 30 days after the entry thereof. R–J Development and Richards should not be allowed to profit from their wrongful repudiation and the litigation arising therefrom.

In my reading, this is the only decision of its kind in the history of American Jurisprudence. The majority's decision relies upon a broad, sweeping equitable declaration found in *Ellison v. Ventura Port Dist.,* 80 Cal.App.3d 574, 583, 145 Cal.Rptr. 665, 670 (1978), and said authority does not specifically rivet onto the issue at hand. There are no specific decisions to support the majority's holding; hence, the holding is blanketed in supposed safety by a gener-

ic declaration in a California case. Therefore, in my mind, the majority's holding is incorrect in that it permits Lewis and O'Brien the opportunity to exercise the options in the future. Such a holding appears to be without precedent in the law of these United States. We should affirm our prior decision. I further dissent based on what I perceive to be a lack of consistency between Lewis' and O'Brien's original prayer for relief and their later prayers under the Notice of Review and, consequently, resulting in a shift of the majority opinion. Accordingly, I respectfully dissent therefrom.