Arthur L. RUSCH and Lana K. Rusch, husband and wife, Plaintiffs and Appellants,

v.

Michael L. KAUKER and Judith J. Kauker, husband and wife, Defendants and Appellees.

No. 17438.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1991.

Decided Dec. 24, 1991.

Rehearing Denied Feb. 3, 1992.

James E. McCulloch, Minick & McCulloch, Vermillion, for plaintiffs and appellants.

Robert R. Nelson, Bierle, Nelson & Michels, Yankton, for defendants and appellees.

SABERS, Justice.

Rusch appeals from a judgment in favor of Kauker claiming that the trial court erred in concluding the Offer and Agreement to purchase was not a binding agreement between the parties. We reverse and remand.

## FACTS

Arthur and Lana Rusch (Rusch) owned a house at 620 Canby, Vermillion, S.D. Rusch lived in this house from 1976 until he moved to a new residence in Vermillion in 1982. The house had a mortgage balance of approximately $20,000. This mortgage contained a "callable on sale" clause which would allow the bank to request full payment of the mortgage if title became vested in any other person. Rusch listed the house for sale when he moved to the new residence, but no sale was made during that year. To defray expenses, Rusch leased the house for a period of nine months. This lease was later converted to a month to month basis to increase the marketability of the house.

In September of 1983, Rusch relisted the house with Sue Roach (Roach)[1] of Century 21 at $67,500 and a provision requiring buyers to "arrange own financing."

In July, 1983, Dr. Michael Kauker (Kauker) came to Vermillion from Memphis, Tennessee looking into employment with the University of South Dakota School of Medicine. He and his wife were interested in obtaining housing in the Vermillion area. Kauker's wife was a real estate agent with

---

1. Roach later married and changed her name to Christensen.

Century 21 in Memphis, which caused them to contact the Century 21 office in Vermillion. However, Kauker returned to Tennessee without making any decision as to housing.

On October 4 and 5, 1983, Kauker met with Roach for the second time. During this meeting, several houses were shown to Kauker, including the Rusch house. Roach testified that Rusch had informed her of the mortgage on the house and that she informed Kauker. On October 12, 1983, Kauker made an offer on the Rusch house which required seller financing by means of a contract for deed and a closing/possession date of December 1, 1983. Rusch rejected this offer.

On October 17, 1983, Kauker made a second offer on the Rusch house. Prior to the expiration of the offer, Rusch informed Kauker that the interest rate on the proposed contract for deed was satisfactory but the purchase price was not. On October 20, 1983, Kauker made a third offer on the Rusch house. This offer was satisfactory to Rusch in interest rate and purchase price.

The offer was prepared on a standard offer and agreement form which contained the following language:

8. If this offer is not accepted by the Seller or if offer is contingent upon buyer obtaining FHA, VA or other loan and he is unable to qualify for or obtain such loan, then this agreement (in either case) shall be abrogated and of no force or effect and Buyer's earnest money shall be returned to him in full.

9. Upon approval and acceptance of this Agreement by Seller and in event Buyer shall not complete the purchase as herein agreed, Buyer shall forfeit the deposit made by him.

Kauker insisted on the addition of two sentences to the standard form:

Appliances & mechanically functioning systems to be in working order on closing day. *This offer is contingent upon Buyers' approval of Contract for Deed.* (emphasis added).

Roach testified that following a discussion with Kauker, she informed Rusch that this approval contingency was to apply to form only. On October 23, Rusch accepted this offer, it was signed by all parties and became their agreement (Agreement). The December 1, 1983 closing and possession date remained unchanged. Following the signing of the Agreement, Rusch gave his tenants notice of termination to meet the December 1, 1983 possession date.

As a result of some confusion between Rusch and Roach as to responsibility for preparing the Contract for Deed, it was not prepared until November 15, 1983. Kauker testified that he did not receive the draft until November 28, 1983. Kauker responded to the Contract for Deed with approximately ten objections on November 29, 1983. The primary objection to the Contract for Deed, that contracts for deed are illegal, apparently resulted from an opinion from a Tennessee attorney. Roach persuaded Kauker and Rusch to meet on December 1, 1983 to work out an acceptable contract for deed.

At the December 1 meeting, Kauker expressed concern over the mortgage on the Rusch house.[2] Roach testified that during this meeting and throughout the negotiations, she unsuccessfully encouraged Kauker to obtain South Dakota legal counsel. Following this meeting Roach and Rusch made several changes to the Contract for Deed to attempt to satisfy Kauker's objections.[3] A second draft was delivered to Kauker on December 2, 1983, but it was

---

2. There was testimony that the bank gave oral assurances that the Rusch mortgage would not be called upon the proposed sale to Kauker, but refused to give written assurance.

3. The second draft of the contract for deed provided:

1) Monthly payments would include principal and interest.

2) Rusch would pay the mortgage in full in the event the bank exercised its rights to demand full payment due to the sale.

3) There would be 90 days notice of any intention to cancel the contract following any default.

4) Inspection of the house only upon reasonable belief that the property was being damaged, neglected or injured.

also rejected. Kauker's letter of rejection stated two primary objections:

We could not approve the contract that was presented to us for two main reasons. The contract did not involve or request approval of the sale from the involved third party, the National Bank of South Dakota, that holds a mortgage of about $20,000 on the house. We feel that their approval is needed for an acceptable transaction. Our second concern was lack of protection of buyer's rights concerning cash deposits, additions or major improvements. We could not risk a 30 day repossession, stipulated in the original contract-for-deed, on such large investments.

Following receipt of this letter, Rusch wrote Kauker and requested that Kauker submit a contract for deed that would be acceptable to him. Kauker did not respond other than to point out that the December 1, 1983 deadline had passed and no further negotiation was desired.

Despite no response, Rusch prepared and delivered a third draft of the contract for deed. No discussions or negotiations were had on this draft. On December 15, 1983, Rusch gave written notice to Kauker of his intention to mitigate damages by re-renting the house, but no renter was found until April, 1984. On December 19, 1983, Rusch filed suit against Kauker alleging breach of the "Offer and Agreement to Purchase" and sought specific performance and damages.

The trial court issued a memorandum decision denying Rusch's motion for summary judgment on October 1, 1984, but failed to sign the order denying the motion for summary judgment until April 12, 1985. The matter went to trial before Circuit Judge Talbott on February 2, 1988. Since the trial court had not made a decision by late 1989, Rusch attempted to supplement the record to reflect that the house had been sold and that specific performance was no longer sought. This motion was later dropped. The trial court finally issued its memorandum opinion on November 5, 1990 in favor of Kauker and accepted the blame for the delay as follows:

"Substantial delay has been encountered in the development of this Decision, fault for such delay properly lying at this Court's door." The trial court signed findings of fact and conclusions of law on December 10, 1990, and concluded that given the substantial negotiations that occurred between Rusch and Kauker, the Offer and Agreement was not intended to be a final or complete binding agreement, thus no enforceable contract existed between Rusch and Kauker.

Rusch appeals claiming that the trial court erred by 1) concluding that there was no binding agreement between the parties, and 2) even if no binding agreement existed between the parties, he is entitled to damages as a result of requests by Kauker.

## 1. OFFER AND AGREEMENT

■ Rusch claims the trial court erred in concluding that the Offer and Agreement was not a binding final and complete agreement. Conclusions of law "are given no deference by this court on appeal" and are reviewed de novo. *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113, 117 (S.D.1987). We are confronted here with mixed questions of law and fact.

[M]ixed questions of law and fact [are] questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard[.]

*Id.* at 118, quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n. 19 (1982). In this case, the facts are established and the issue is whether those facts constitute a binding agreement. Mixed questions of law and fact "are of the type which we may freely review." *Matter of Groseth Intern., Inc.*, 442 N.W.2d 229, 232 (1989). *See also Permann*, 411 N.W.2d at 119.

■ The trial court made its determination primarily on *Sabow v. Hall*, 323 N.W.2d 861 (S.D.1982). In *Sabow*, substantial negotiations were also conducted. However, these negotiations were not limited to the final contract for deed; they extended back to the offer and agreement.

During this process several substantial changes and additions to the *offer and agreement to purchase* were made at the request of appellee and Dr. Sabow, or his attorney. It is clear from these facts and circumstances that the parties did not intend the offer and agreement to purchase to be a final or complete agreement on the terms and conditions of sale. *Id.* at 863 (emphasis added). In the present case, the negotiations concerned provisions of the contract for deed, *not* the Agreement. Thus, the underlying Agreement was left unchanged. Therefore, *Sabow* is factually distinguishable.

In *O'Brien v. R–J Development Corp.*, 387 N.W.2d 521 (S.D.1986), *reh'g granted and aff'd in part and rev'd in part on other grounds*, 398 N.W.2d 132 (S.D.1986), this court upheld the trial court's determination that the offer and agreement constituted a complete agreement. *Id.* 387 N.W.2d at 525. In *O'Brien*, the seller objected to the purchase price after signing the offer and agreement to purchase. *Id.* at 524. Likewise, in *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D.1985), the offer and agreement together with an "Agreement to Occupy Prior to Close" was held to be sufficient to meet the writings requirement of SDCL 53–8–2 and support an action for specific performance. *Id.* at 115–116. The *Wiggins* purchaser was required to obtain a "13% conventional loan" and we upheld the determination that such a phrase was not too ambiguous to allow specific performance. *Id.* at 116.

In this case, the Agreement contained all of the necessary terms to constitute a basic contract. The Agreement set forth the parties involved, a description of the property, the purchase price and the method of payment. The negotiations between Rusch and Kauker did not involve the Agreement, but concerned the Contract for Deed and topics of buyer security, i.e., time before default, inclusion of the bank in the agreement, escrow arrangements, and disposition of profits upon default. As in *O'Brien*, the Offer and Agreement is an agreement to purchase whereby, "all parties shall enter into subsequent paper work necessary to the incidental execution of the contract and that a party could not *unreasonably* withhold approval of the final document necessary to consummate the transfer of property." *O'Brien*, 387 N.W.2d at 525 (emphasis added). Therefore, since all essential terms were expressed and unchanged, the Agreement was final and complete. Thus, the trial court's conclusion to the contrary is erroneous under our standard of review of mixed questions of law and fact. *Permann*, 411 N.W.2d at 119.

■ Since the Agreement was final and complete, we must determine whether Kauker's objections to the Contract for Deed were valid. Under the Agreement, the sale was contingent on Kauker's approval of the Contract for Deed. It is clear that Kauker's "approval" must be measured objectively and objections can not be arbitrary or unreasonable. *O'Brien*, 387 N.W.2d at 525; Restatement (Second) of Contracts § 228 comment b (1979). Kauker based his objection to the Contract for Deed primarily on the mortgage remaining on the property. This court has repeatedly stated that:

> [I]n the absence of misrepresentation or fraud a purchaser cannot, prior to the time fixed by the contract for conveyance, complain that the seller's title is deficient or encumbered.... 'All the vendee may rightfully insist upon ... is that the title be perfect at the time fixed by the contract for final performance.'

*Wolken v. Wade*, 406 N.W.2d 720, 723–24 (S.D.1987), *quoting Luck Land Co. v. Linstrom*, 48 S.D. 21, 201 N.W. 707, 708 (1924); *see also, Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717, 720 (1964). Under the proposed Contract for Deed, title was not to pass until the final payment was tendered. So long as the encumbrance remains less than the purchase price, as here, no defect to the title exists.

> Where the incumbrance can be removed merely by the application of the purchase money, and the court can provide for a conveyance of clear title to the vendee, the mere fact that an incumbrance exists which the plaintiff has not removed, or

even is unable to remove without the application of the purchase money, will not prevent a decree for specific performance.

*Renner,* 127 N.W.2d at 720, *quoting Riley v. Wheat,* 45 S.D. 320, 187 N.W. 425, 427 (1922). Therefore, since the mortgage was not a defect in Rusch's title, Kauker's objection to the Contract for Deed was unreasonable.

## 2. DAMAGES

Due to our holding on issue one, Rusch is entitled under the Agreement to retain Kauker's earnest money deposit. In reliance upon the Agreement, Rusch terminated his lease to meet the closing and possession date specified by Kauker. Therefore, we reverse and remand for a determination of damages.

AMUNDSON, J., concurs.

MILLER, C.J., concurs specially.

WUEST and HENDERSON, JJ., dissent.

MILLER, Chief Justice (concurring specially).

For reasons stated by the majority, Kaukers' objections to the contract for deed were unreasonable. As further support for that position, I feel compelled to state that, in my opinion, the clause in the mortgage (be it called a "due on sale" or "callable on sale" clause) is not applicable here.

That clause, in salient part, provides:

Mortgagors further covenant and agree that.... conveyances or other transfer of all or any part of the interest of mortgagors, or any of them, in all or any part of said premises *whereby the title becomes vested in any other person,* without obtaining in such instance, the written approval of mortgagee shall give to mortgagee the right, at its option, of declaring the unpaid principal balance of such principal note and interest thereon together with all the sums advanced hereunder immediately due and payable without notice. (Emphasis added.)

It is important to note that legal title does not *vest* by virtue of a contract for deed. Admittedly, equitable title passes; however, legal title does not *vest* until execution of the deed contracted for. *First Federal Sav. & Loan Ass'n, Etc. v. Wick,* 322 N.W.2d 860 (S.D.1982); *Tarpinian v. Wheaton,* 79 S.D. 473, 113 N.W.2d 472 (S.D.1962). *See also Buhl v. Bak,* 400 N.W.2d 903 (S.D.1987) (Sabers, J., dissenting). Therefore, in my opinion, Bank would not have had authority to "call" this loan merely through Ruschs' entry into a contract for deed with Kaukers. I am convinced that the clause's plain language mandates that conclusion.

I recognize that the mortgage does put an encumbrance on the title to the property. It is important to note that Ruschs did not hide this encumbrance; but rather, they specifically disclosed it in the proposed contract for deed and bound themselves therein to satisfy it prior to the time Kaukers were required to make the final payment. Based upon the authorities cited by the majority, this does not create a *defect to the title. See specifically, Wolken v. Wade,* 406 N.W.2d 720 (S.D.1987); *Renner v. Crisman,* 80 S.D. 532, 127 N.W.2d 717 (1964); and *Riley v. Wheat,* 45 S.D. 320, 187 N.W. 425 (1922).

HENDERSON, Justice (dissenting).

Reliance upon *Wiggins* and *O'Brien* to uphold a legally binding "contract" in this case is unsound. In reading both of those decisions, it becomes apparent that in neither case was there a controlling provision as found in this set of facts, i.e., "This offer is contingent upon Buyers' approval of Contract For Deed." Therefore, this case is totally distinguishable.[1] Based upon this crucial difference, I must respectfully dissent.

Three different Contracts For Deed (Exhibits 11, 12, and 13) were submitted to buyers (the Kaukers) by Attorney Rusch (representing himself and his wife as sellers); Kaukers refused to sign each one.

1. Ruschs state in their brief, at page 32, "they have been unable to find any case authority identical to the type of contingency that we have in this case."

Extensive negotiations were taking place during this period of time. An agreement to make a future contract is not binding when the terms and conditions are left to future negotiation. *Professional Facilities Corp. v. Marks*, 373 Mich. 673, 131 N.W.2d 60, 63 (1964).

In Conclusions of Law II, III, IV, V, and VII, the trial court expressed:

II. Defendant subsequent thereto, submitted a Contract for Deed (Plaintiffs' Exhibit No. 11), which Defendants received on or about November 28, 1983, and which Defendants did not approve of and ultimately rejected.

III. Plaintiffs, Defendants, and the relator (sic) subsequent thereto held a meeting and attempted to resolve differences and difficulties which Defendants had with the Contract For Deed submitted, which meeting resulted in a redrafted Contract For Deed (Plaintiffs' Exhibit No. 13) being submitted to the Defendants on or about December 3, 1983, however, this redrafted Contract For Deed did not incorporate all of the requested revisions of the Defendants and as such, did not constitute a meeting of the minds and a binding and enforceable agreement.

IV. Substantial negotiations occurred between the Plaintiffs and Defendants, in an attempt to resolve the disagreements and concerns which Defendants had with the last submitted Contract For Deed (Plaintiffs' Exhibit No. 13) however, no subsequent Contract For Deed incorporating all of Defendants' objections and requested provisions was prepared by the Plaintiffs or submitted to the Defendants, and as such, no binding enforceable agreement was reached between the Plaintiffs and the Defendants.

V. Given the substantial negotiations which occurred between the Plaintiffs and Defendants subsequent to the Offer and Agreement to Purchase initially entered into between the parties, it is clear that the parties did not intend the Offer and Agreement to Purchase to be a final or complete binding agreement on the terms and conditions of the sale of the subject property.

VII. No enforceable contract existed between the Plaintiffs and Defendants, and according to case authority, as well as the conduct of the parties herein, the Offer and Agreement to Purchase is not a contract upon which specific performance could (or should) be based as it rose to no greater level than an agreement to agree.

I agree with the trial court. Under *Permann*, these conclusions were not mistakes of law.

Why, if there was a legally binding contract—why if there were no ongoing negotiations attendant in the relationship, did Ruschs submit three different Contracts For Deed to Kaukers to sign? (Exhibits 11, 12, and 13). The answer is evident: there existed no binding agreement due to the above contingency and aggressive action and compromise was underway to get the Kaukers to sign. Kaukers' sin is, apparently, that they refused to be bullied. It's America! You cannot be forced into a contract. Our state law provides in SDCL 53-3-3: "Consent is not mutual unless the parties all agree upon the same thing in the same sense." Here, the parties were of a different mind; this was spawning the negotiations; this was triggering the changes in three contracts of deed. If there is not a mutuality of consent upon *any* material matter, there is, quite simply, no contract. In *Ward v. Melby*, 82 S.D. 132, 137, 142 N.W.2d 526 (1966) we held:

This court has held that the correct rule in specific performance cases is that the contract with all of its material terms and conditions must be proved by evidence so clear and satisfactory to the mind of the trial as to leave no doubt as to the agreement. *Ward v. Melby*, 142 N.W.2d 526, 528 (S.D.1966)

Kaukers signed the initial "offer" (it was denominated an "offer" in the contingency provision) which expressed that possession was to be granted unto buyers on December 1, 1983. This never took place. Several times the Kaukers expressed their strong concerns that they wished to close the deal by the first of December so their

family could be together by Christmas in Vermillion. This was extremely important to this family.

In the instant case, the Offer and Agreement to Purchase was drafted by Christensen, who was acting as Ruschs' agent. One important *crucial* fact must not be overlooked, however, and that is that all of the language cited by Ruschs is the language and specific testimony of Christensen. As such, the language *is hers and hers alone* and further represents *her* interpretation and commentary on discussions she had with Mrs. Kauker. Thus, Kaukers contend that the entire source of Ruschs' "form" over substance argument lies with their own agent, Christensen, and her improper or inappropriate interpretation of negotiations and discussions with the Kaukers. I agree. She is not the judge. Her characterizations are conclusory, through hearsay evidence.

Ruschs further cite a telephone conversation between Judith Kauker and Christensen, and maintain the contents of that conversation, which Ruschs contend is "uncontradicted testimony," as controlling for the proposition that "the parties agreed that buyers had a right to have the 'form' of the contract reviewed and approved by their attorney."

Findings of Fact VII and VIII, entered by the trial court, are not clearly erroneous:

VII. Plaintiffs admitted in testimony that a mortgage existed on the subject premises held by a Vermillion Bank, and that the bank would not give written assurance of not foreclosing if there was a sale of the property.

VIII. The testimony of the relator (sic) further indicated that the redrafted Contract For Deed (Plaintiffs' Exhibit No. 13) contained three errors in that the redrafted instrument did not comply with Defendants' objections to the original Contract For Deed (Plaintiffs' Exhibit No. 11). These errors included a default time of thirty (30) days versus ninety (90)

days as requested by the Defendants, the due-on-sale clause had not been revised according to Defendants' request, and the redrafted Contract For Deed did not contain the escrow agreement for the Warranty Deed as requested by the Defendants.... [2]

This Court should consider that the mortgage lien Plaintiffs intended to maintain on the property contained a "due on sale" clause. This Court is well aware that we have upheld enforceability of due on sale clauses. *First Federal Savings and Loan Association of Rapid City v. Kelly*, 312 N.W.2d 476 (S.D.1981); *First Federal Savings and Loan Association of Storm Lake v. Lovett*, 318 N.W.2d 133 (S.D.1982). This Court has further concluded that the signing of a contract for deed is a sufficient conveyance to entitle a mortgage holder to declare the entire mortgage debt to be immediately due and payable. *First Federal Savings and Loan Association of Rapid City v. Kelly*, 312 N.W.2d 476, 481 (S.D. 1982). Per this writing, I have not called the "due on sale clause" a "defect." Neither did *Kelly*. Mr. Chief Justice's special concurrence, in this regard, somewhat mystifies me. My point is this: Why would the Kaukers, or anyone buying property under a contract for deed, want to be immediately faced with a foreclosure action on the property which they are buying?

During negotiations, Kauker offered to proceed to secure financing from the Veterans Administration and discharge all liens against the property. The Plaintiffs said that this was not acceptable.

A "Memorandum Decision After Trial" was incorporated into the Findings of Fact and Conclusions of Law by reference. In applying the clearly erroneous standard, our function is not to decide factual questions *de novo*. The question is not whether this Court would have made the same findings, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been made. *In re Estate of Hobelsberger*, 85 S.D. 282, 181

---

**2.** Each of these requests were reasonable; in retrospect, you, the reader now contemplate on the wisdom of the Kaukers' inserting the provi-

sion: "This offer is contingent upon Buyers' approval of a Contract for Deed."

N.W.2d 455 (1970). Hereby, I set forth the trial court's observations/findings; these are found on pages 175, 176, and 177 of the settled record:

Plaintiffs admit that a mortgage exists on these premises, held by a bank in Vermillion, and that the said Bank would give no written assurance of not foreclosing if there was a sale but, orally, Bank indicated they would not so foreclose.

The realtor testified that she found in Exhibit No. 13 three errors. The instrument still contained a default time of 30 days, and Plaintiffs had agreed to 90 days for default to occur. The due-on-sale clause had not been taken care of according to the Plaintiffs' wishes.

The realtor got Defendants' permission to secure a title opinion which was furnished by Attorney Craig Thompson, see Defendants' Exhibit "A".

Additionally, realtor admitted that Exhibit No. 13, the re-draft of the Contract For Deed, also did not contain the escrow agreement for the warranty deed to be given as requested by the Plaintiffs, and did not contain any language concerning the Defendants' right to any excess profits that might be realized from the sale of the premises if there was a foreclosure by default. The realtor attempted to justify the omission of the escrow arrangement from the Exhibit No. 13 because that was "standard" procedure even though it was not in the contract. Dr. Kauker testified that he was aware of a "loan" on the realty but was not aware of the "mortgage." Dr. Kauker testified that he had received Exhibit No. 11 on November 28, 1983 at Vermillion, South Dakota, the same date on which he received the attorney's opinion as to title. On November 29, 1983, Dr. Kauker submitted a list of objections that he made to Exhibit No. 11. He testified that he first knew of the mortgage by reading the attorney's title opinion, the existence of the mortgage being listed by the attorney as a title "defect."

Dr. Kauker also testified that he was concerned about this title defect; that he desired to protect his cash deposit as well as some $20,000 worth of improvements Defendants intended to initially make to the premises, in case of the Plaintiffs' default on title failure; the premises were not in the good condition that he required; the foreclosure period should be extended to ninety days; he wanted a change made in the re-sale provisions; he wanted the Plaintiffs' right of inspection of the premises to be limited; he wanted an escrow agreement for the deposit of the deed; and he wanted the payments to be amortized to include principle and interest.

Dr. Kauker also testified that the Plaintiffs had made no settlement of the title problem, that there was of record an assignment of rents and he asked the Plaintiffs to void the due-on-sale clause in the mortgage to the Bank.

As to Exhibit No. 13, Dr. Kauker felt that it did incorporate some objections that he had made but there was still rubbish in the yards, the garage area was one-fourth full of broken parts, and the appliances could not be inspected because of boxes and so forth. Dr. Kauker felt that Exhibit No. 13 did not provide for the 90–day default period that had been agreed to; that his requirements that his right to secure improvements made by him were not properly met and that the requirements for an escrow agreement were not met. Dr. Kauker agreed that the inspection right of the Plaintiffs was limited as he required as was the assignment of rents and the amortization of payments.

Dr. Kauker testified that he offered to pay off the bank mortgage, that the bank should get written approval to the sale of the realty to Defendants; Dr. Kauker offered to take over the bank mortgage and offered to enter into a mortgage arrangement with Plaintiffs, all of which proposals were refused.

*I conclude that* Plaintiffs's *Exhibit No. 13*, although a re-type job, simply *did not conform to the agreements reached by the parties when discussing modifications to be made to Plaintiffs' Exhibit No. 11.* (emphasis supplied mine).

SDCL 21-9-2 provides: "The following obligations cannot be specifically enforced: (6) An agreement, the terms of which are not sufficiently certain, to make the precise act which is to be done clearly ascertainable." In *Wiggins*, we held that the equitable remedy of specific performance is always addressed to the sound discretion of the trial court, according to the facts and circumstances in each case. In my opinion, the trial court did not abuse his equitable discretion.

Lastly, it behooves Plaintiffs, as expressed by the trial court, to sustain their burden of proof in establishing an enforceable contract; trial court concluded this had not been done. I agree. Trial court held that Defendants, on their counterclaim, could not uphold same for the same reason. *See, Sabow v. Hall,* 323 N.W.2d 861, 863 (S.D.1982) (offer and agreement to purchase *not* a contract where substantial negotiations between parties occurred after offer and agreement was signed). Kaukers are entitled to a return of their $500.00 deposit, now held for approximately eight years. After eight years, to require specific performance, requiring a couple to buy a home in Vermillion, South Dakota, is impractical, non-sensical, untimely, and without support in the Law. I note in the record, that during these eight years, Ruschs sold the house in question. Now, apparently, it is solely a damage case. Under my theory, damages would not be reached. Respectfully, do I call attention to my Brothers on this Court that Plaintiffs dropped their motion to supplement the record that specific performance was no longer sought. I do note, however, that Plaintiffs' proposed findings of fact included a finding for approximately $13,000.00 in damages. Ruschs' complaint also requested damages for an alleged breach of a contract. Again, this would not be reached under my thesis.

I am authorized to state that Justice WUEST joins in this dissent.